2009 UT App 108

STATE of Utah, Plaintiff and Appellee,

v.

Judy GIBSON, Defendant and Appellant.

No. 20080296–CA.

Court of Appeals of Utah.

April 23, 2009.

Linda M. Jones, Gretchen Havner, and C. Bevan Corry, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges THORNE, ORME, and DAVIS.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Judy Gibson appeals the district court's denial of her motion to withdraw her guilty plea. Gibson argues that she should be allowed to withdraw her plea because it was not knowingly and voluntarily entered. We affirm.

## BACKGROUND

¶ 2 The State charged Gibson with one count of unlawful dealing of property by a fiduciary, see Utah Code Ann. § 76–6–513 (2008), and one count of theft by deception, see id. § 76–6–405. These charges were a result of Gibson taking out and using credit cards in the name of her elderly, incapacitated aunt; taking out a mortgage on her aunt's home and using the money for her own expenses; and writing herself checks from her aunt's checking account.

¶ 3 In June 2004, Gibson and the State entered into a plea agreement, in which Gibson pleaded guilty to the charge of unlawful dealing of property by a fiduciary and the State dismissed the charge of theft by deception. The plea agreement provided that Gibson would pay a minimum of $55,220 in restitution, but because there was a dispute over other amounts owed, the parties requested a restitution hearing. The district court scheduled a restitution hearing, placed Gibson on probation for thirty-six months, and held the plea in abeyance for thirty-six months.

¶ 4 The restitution hearing was held in October 2004. The resulting order set the total restitution amount at $238,184.92. Gibson subsequently moved to amend the restitution order, arguing simply that the total figure was incorrect because it contained certain amounts that she had not taken from her aunt. The district court denied the motion.

¶ 5 In January 2005, the State filed a motion for order to show cause as a result of Gibson's complete failure to make restitution payments. Gibson admitted the allegations at a hearing in March 2005, at which time the district court revoked and reinstated the probation and plea in abeyance, ordering payments to begin in April 2005. Gibson made payments through October 2005 but thereafter again failed to make restitution payments. Thus, in March 2006, the State filed a second motion for order to show cause.

¶ 6 A few months later, in June 2006, Gibson filed a motion to withdraw her guilty plea, arguing that her plea was not knowing and voluntary because neither the total restitution amount nor the required monthly payment was fixed at the time of her plea.[1] After briefing and oral argument, the district court determined that the plea was knowing and denied the motion.

¶ 7 A hearing was then held on the second motion for order to show cause. The district court determined that Gibson had not complied with the plea in abeyance, entered Gibson's guilty plea, and set a sentencing hearing. Gibson was later sentenced to a suspended prison term of one to fifteen years, thirty days in jail, twelve months probation, and restitution. Gibson thereafter timely appealed the denial of her motion to withdraw her guilty plea.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Gibson argues that the district court misapplied the law when determining that her guilty plea was knowing and voluntary. "[T]he ultimate question of whether the trial court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness." *State v. Holland*, 921 P.2d 430, 433 (Utah 1996).

## ANALYSIS

¶ 9 Under rule 11 of the Utah Rules of Criminal Procedure, the district court may not accept a guilty plea unless it determines both that the defendant knows the various consequences of entering a guilty plea and

that the defendant is voluntarily entering the plea. *See* Utah R.Crim. P. 11(e); *see also State v. Visser*, 2000 UT 88, ¶ 11, 22 P.3d 1242 (" '[T]he trial court [must] personally establish that the defendant's guilty plea is truly knowing and voluntary and establish on the record that the defendant knowingly waived his or her constitutional rights.' " (second alteration in original) (emphasis omitted) (quoting *State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993))). Gibson argues that she was not informed of the consequences of her plea because the restitution amount was not sufficiently established at the time she entered her plea. Accordingly, Gibson contends that her plea was not knowing and voluntary and that the district court should have therefore granted her motion to withdraw her plea.

¶ 10 "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). But this does not require that the defendant know the exact ultimate result of entering a guilty plea. "[T]he substantive goal of rule 11 is to ensure that defendants know of their rights and thereby understand the *basic consequences* of their decision to plead guilty." *Visser*, 2000 UT 88, ¶ 11, 22 P.3d 1242 (emphasis added). Certainly a defendant can understand the basic consequences resulting from his or her plea without knowing the exact dollar amount of restitution.[2] Indeed,

---

1. Interestingly, Gibson's payments halted one month after the death of her aunt, who died at age eighty-eight. And it was only after this event that Gibson attempted to withdraw her plea.

   Ordinarily, a motion for withdrawal of a plea held in abeyance must be filed within thirty days of the plea's entry. *See* Utah Code Ann. § 77-13-6(2)(b) (2008). However, due to certain circumstances that arguably extended the time for filing, which circumstances are not relevant on appeal, the State does not contest the timeliness of Gibson's motion. We therefore do not address this issue.

2. A requirement that the restitution amount be firmly established in order for a guilty plea to be

knowingly entered would not be in harmony with statutory provisions. *See, e.g.*, Utah Code Ann. § 77-13-6(2)(b) (2008) (requiring a motion to withdraw a plea as not knowingly entered to be filed before the sentencing determination is announced); *id.* § 77-38a-202(1)(b) (stating that an "estimated amount of restitution" will suffice at the time of conviction or plea disposition); *id.* § 77-38a-203(1)(a) (requiring the Department of Corrections to prepare a *presentence* investigation report itemizing the losses sustained and making a specific restitution recommendation). The State correctly observes that such a rigorous requirement "would substantially limit the number of cases that could be resolved through plea bargaining."

Gibson acknowledges that "parties may enter into a knowing and voluntary plea agreement even if they dispute restitution amounts." Nonetheless, Gibson argues that the information she had at the time of sentencing was insufficient to give her a "basic understanding of the possibilities under the plea." We disagree and hold that an otherwise knowing and voluntary plea is not affected by a dispute over the amount of restitution.

¶ 11 That is especially true in this case. The record supports that Gibson understood the basic consequences of her guilty plea, and we do not agree with her that "the parties lacked a mutual understanding as to the amount in restitution that may be pursued." First, the plea agreement recited that the parties agreed on a minimum amount of restitution but that other amounts were still in dispute and would be determined at a later date:

The parties agree there is at least $55,220.00 due and owing in restitution in this matter. However, due to a dispute over other amounts, a restitution hearing is requested by the parties. The restitution amount to be determined at said hearing will cover the time period April 7, 2002 to October 31, 2003.

Second, the prosecutor specifically noted his intention to seek restitution above the agreed-upon minimum amount:

Basically the major concern here, as explained to the Court, is there's a stipulated amount of restitution of $55,220, but that there are additional funds that the State claims were taken ... and I believe we need a brief restitution hearing to determine how much credit the Court is going to give for some of those services.

Third, the district court clarified that Gibson would be required to make a full restitution:

I am also going to require as part of this plea in abeyance that you fully and completely pay restitution. The amount of $55,220 is due and owing in this matter at the time as part of the negotiation today. There may still be some concerns about further restitution during the time period of April 7th, 2002 through October 31st of 2003 and I understand that both parties wish an opportunity to gather some docu-

mentation to get some information on that restitution amount and so I am going to set that for a restitution hearing upon everyone's request in the October time frame.

Fourth, the plea agreement specified that restitution would be "for the benefit of [Gibson's aunt] to the various credit cards *and other creditors* identified at the restitution hearing." (Emphasis added.) Fifth, Gibson acknowledged in the agreement, "I also know that I may be ordered to make restitution to any victim(s) of my crime, including any restitution that may be owed on charges that are dismissed as part of a plea agreement." And finally, the fact that Gibson took out a mortgage in her aunt's name and used the proceeds for herself was also stated as part of the factual basis supporting the count to which she pleaded guilty. Thus, we see nothing here that would have given Gibson the impression that she would not be required to make restitution in any amount greater than the $55,220 resulting from her unauthorized credit card usage.

¶ 12 Gibson bases much of her argument on *State v. Bickley*, 2002 UT App 342, 60 P.3d 582, which held,

If an agreement is reasonably disputed, or if there is some misunderstanding, it is the responsibility of the trial court to assure that the agreement is clear to all parties before ordering restitution beyond that alleged in the information. Because both parties lacked a clear understanding of what was meant by total victim restitution, this situation "can be most easily corrected by placing [Defendant and the State] in their original positions."

*Id.* ¶ 16 (alteration in original) (citation omitted). The situation here, however, is easily distinguishable. Perhaps most importantly, because of the death of the victim shortly before the filing of Gibson's motion to withdraw her plea, it is impossible to place the parties in their original positions. Further, in *Bickley*, the defendant had pleaded to the charges in count one of the information, which charged him with criminal nonsupport over a specific period of time. *See id.* ¶ 3. As part of restitution, however, he was ordered to pay child support arrearages for dates

prior to those dates listed in the information. *See id.* ¶ 4. Because of this discrepancy, the *Bickley* court determined that there was a misunderstanding as to what arrearages would constitute the "total victim restitution" that the defendant agreed to pay as part of his plea. *See id.* ¶ 15. We see no such discrepancy or misunderstanding in the case before us. The information here alleged that Gibson committed various acts that constituted unlawful dealing of property by a fiduciary: "[D]efendant took monies entrusted to her and mismanaged them and used a power of attorney to secure a loan against [her aunt]'s property without her permission." And the plea agreement itself stated with specificity the precise nineteen-month period for which restitution was still in dispute. The plea agreement also specified that restitution would be sought for other creditors of Gibson's aunt beyond the credit card companies. Thus, we see no misunderstanding as to what amounts the ordered restitution could potentially include.[3] Instead, the plea "firmly established," *see id.* ¶ 11, Gibson's responsibility to pay restitution as ultimately ordered.[4]

■ ¶ 13 Gibson also relies on part of the Crime Victims Restitution Act, *see* Utah Code Ann. §§ 77–38a–101 to –601 (2008), to argue that she was not informed of the basic consequences of her plea because the prosecutor did not make requisite disclosures. She cites to a provision requiring the prosecutor to disclose the "actual or estimated amount of restitution" at the time of the plea. *Id.* § 77–38a–202(1)(b). This argument was not sufficiently preserved for appeal. *See generally State v. Brown*, 856 P.2d 358, 361 (Utah Ct.App.1993) (" '[F]or an issue to be sufficiently raised, even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it.' "). Gibson argued below only that her plea was not knowing because the restitution amount

was still in dispute at the time of the plea, not that the prosecutor failed to comply with statutory requirements and that such rendered her plea unknowing. And we see no mention of this statutory provision in *any* of the documents to which Gibson cites as preserving her issues raised on appeal.

¶ 14 Notwithstanding that the issue was not preserved, we also observe that Gibson misreads the statute. The plain language of the statute does not mandate disclosure to Gibson but says that the prosecutor "shall provide *to the district court* ... the actual or estimated amount of restitution determined at that time," i.e., the time of the plea. Utah Code Ann. § 77–38a–202(1) (emphasis added). Moreover, it is clear that some sort of estimated amount had been discussed with Gibson because the parties were in a "dispute" about amounts over $55,220. And due to this disagreement, the district court appropriately scheduled a restitution hearing. *See generally id.* § 77–38a–203(2)(c) ("If the defendant objects to the imposition, amount, or distribution of the restitution recommended in the presentence investigation, the court shall set a hearing date to resolve the matter.").

¶ 15 Further, and more importantly, the question of whether restitution was correctly dealt with according to the various requirements of the Crime Victim's Restitution Act is not a rule 11 issue—that is, it does not negatively affect whether the defendant entered her plea knowingly, with an understanding of the basic consequences of pleading guilty and of agreeing to pay restitution. Rather, the ability of the defendant to challenge any failure to comply with the Crime Victim's Restitution Act in arriving at a restitution determination *supports* a knowing and voluntary plea, even in cases where the restitution information available to the defendant is significantly less than available here.

---

**3.** Because we see no ambiguity, latent or otherwise, in the plea agreement's terms, we are not persuaded by Gibson's similar contractual argument, i.e., that the parties did not have a meeting of the minds regarding what amount of restitution could be awarded. *See generally Black's Law Dictionary* 79 (7th ed.1999) (defining the term "ambiguity" as "[a]n uncertainty of meaning or intention").

**4.** Moreover, the amounts of full restitution should have come as no surprise to Gibson, who had put forth the effort to procure such amounts from her aunt and was arguably in a good position to know what amounts she could potentially be liable to repay as a full restitution.

When a defendant has any objection to "the imposition, amount, or distribution of the restitution, the court shall allow the defendant a full hearing on the issue." *Id.* § 77–38a–302(4). A defendant has all the due process rights inherent in such a hearing and also has the right to appeal the resulting determination.[5] Here, Gibson challenged the restitution amount, was given a full hearing on the matter with the accompanying due process rights, moved the court to amend its resulting decision, and then ultimately chose not to exercise her right to appeal the district court's denial of her motion to amend.

### CONCLUSION

¶ 16 The requirement that a guilty plea be entered knowingly and voluntarily does not require that the defendant be apprised of the exact amount that she will be required to pay in restitution. We determine that the record supports that Gibson understood the basic consequences of her guilty plea, and we determine that the district court did not misapply the law in arriving at its decision that her plea was knowing and voluntary. We therefore affirm the district court's denial of Gibson's motion to withdraw her guilty plea.

¶ 17 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and GREGORY K. ORME, Judge.

---

**5.** The Crime Victims Restitution Act specifies that a judgment under that act has the same effect as an ordinary judgment. *See* Utah Code Ann. § 77–38a–401(4) (2008) ("A judgment ordering restitution when recorded in a registry of judgments docket shall have the same [e]ffect and is subject to the same rules as a judgment in a civil action.").