Justice Himonas,
opinion of the Court:
INTRODUCTION
¶ 1 This ease clarifies the interpretation of the phrase “single criminal objective” in the context of the mandatory joinder statute, Utah Code § 76-1-401, which prohibits the State from prosecuting a defendant in separate actions for “conduct [that] may establish separate offenses under a single criminal episode,” id. § 76-1-402(2). A “single criminal episode” is defined as “all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective.” Id. § 76-1-401 (emphasis added).
¶ 2 The Petitioner, David Rushton, argues that the State violated the mandatory joinder statute by prosecuting him from 2011 to 2012 for wage crimes after having prosecuted and convicted him in 2009 and 2010 for tax crimes. Interpreting the phrase “single criminal objective” broadly, Mr. Rushton asserts that the conduct underlying both prosecutions was part of a single criminal episode because it was “closely related in time and ... incident to an attempt or an accomplishment of [the] single criminal objective” of misappropriation of money in his business setting. Id. Therefore, Mr. Rushton argues, the court of appeals erred when it affirmed the district court’s denial of his motion to dismiss the wage crimes prosecution as barred by the mandatory joinder statute. He appealed that denial, and we granted certio-rari to consider the merits of his position.
¶ 3 We affirm the decision of the court of appeals, albeit along a somewhat different *94 line of reasoning. If we were to read the phrase “single criminal objective” as broadly as Mr. Rushton urges us to, the permissive joinder statute, Utah Code section 77-8a-l, would be rendered inoperative. Instead, we consider the totality of the circumstances that bear on whether conduct aims at a single criminal objective, focusing in particular on the location where the crimes were committed, the nature of the offenses (both the similarity in conduct and, as suggested by the concurrence, the extent to which one offense advances the accomplishment of another), whether the crimes involved different victims, and whether the defendant had the opportunity to deliberately engage in the next-in-time offense. We determine that Mr. Rushton’s conduct did not have a single criminal objective and thus did not constitute a single criminal episode.[1] Therefore, the mandatory joinder statute did not require the State to charge the tax crimes and wage crimes in a single prosecution, and the court of appeals correctly concluded that dismissal of the wage case based on the mandatory joinder statute was not warranted.
BACKGROUND
¶ 4 Mr. Rushton started Fooptube LLC, a computer programming and design company in 2005. A few years later, the Utah State Tax Commission began investigating him due to allegations that he had withheld personal and corporate taxes while serving as an owner and officer of Fooptube. On April 14, 2009, the State charged Mr. Rushton with six tax crimes committed between 2005 and 2008.[2] Mr. Rushton was arraigned for the tax crimes on December 14, 2009. In June 2010, pursuant to a plea agreement, Mr. Rushton pleaded guilty to counts five and six, and the remaining counts were dismissed.
¶ 5 In May 2009, several former Fooptube employees approached the prosecutor and informed him of the wage claims they had against Mr. Rushton. The State then launched an investigation into these crimes. During that investigation, the investigator was contacted by the Utah Labor Commission, which informed him that Mr. Rushton had failed to pay wages to approximately eighty-four former Fooptube employees between October 2008 and October 2009. By 2011, ninety-five employees had reported unpaid wages for services provided to Foop-tube. The claims for unpaid wages totaled $1,170,164.07. The investigator also learned that the United States Department of Labor’s Employee Benefits Security Administration was investigating allegations that Mr. Rushton had failed to remit Fooptube employees’ contributions to retirement funds in the amount of $ 107,000.00.
¶ 6 On April 20, 2011, the State filed the wage case against Mr. Rushton, charging him with seven second-degree felonies. The State amended its charges against Mr. Rush-ton on November 3, 2011, to include thirteen charges of class A misdemeanors as possible alternatives to two of the previously charged felonies.[3] Mi[4]. Rushton moved to dismiss the wage case, arguing that under the mandatory joinder statute, his wage crimes and tax crimes were part of a single criminal episode, *95 and that because the tax case had already resulted in a conviction when he entered his guilty plea, he could not be prosecuted for the wage crimes.
¶ 7 The district court concluded that the conduct at issue in the tax case and in the wage case did not constitute a single criminal episode under the mandatory joinder statute. While the district court found that Mr. Rush-ton’s conduct at issue in both cases was closely related in time, it concluded that the conduct at issue in the tax case was not committed in furtherance of the same criminal objective as the conduct at issue in the wage case. According to the district court, although the cases are factually similar, they involve different victims, issues, laws, and jury instructions. As a result, the district court held that the conduct did not constitute a single criminal episode.
¶ 8 After the court denied Mr. Rushton’s motion to dismiss, Mr. Rushton entered a conditional guilty plea to count 3 (amended to a third-degree felony of attempted unlawful dealing with property), count 7, and count 20. Mr. Rushton then appealed the district court’s decision, and the court of appeals affirmed the district court’s ruling, holding that Mr. Rushton’s tax crimes and his wage crimes did not constitute a single criminal episode under the mandatory joinder statute. State v. Rushton, 2015 UT App 170, ¶¶ 5-6, 354 P.3d 223. Mr. Rushton then petitioned for a writ of certiorari asking that we review the court of appeals’ decision against him. We granted the writ and, therefore, exercise' jurisdiction under Utah Code section 78A-3-102(3)(a).
STANDARDS OF REVIEW
¶ 9 “On certiorari, we review the court of appeals’ decision for correctness, focusing on whether that court correctly reviewed the trial court’s decision under the appropriate standard of review.” Hansen v. Eyre, 2005 UT 29, ¶ 8, 116 P.3d 290 (internal quotation marks omitted). A trial court’s denial of a motion to dismiss presents a question of law, which is also reviewed for correctness. See State v. Arave, 2011 UT 84, ¶ 25, 268 P.3d 163.
ANALYSIS
¶ 10 We affirm the court of appeals’ denial of Mr. Rushton’s motion to dismiss. In so doing, we clarify the interpretation of the phrase “single criminal objective” in the context of the mandatory joinder statute. Under the mandatory joinder statute, the State is prohibited from prosecuting a defendant in separate actions for conduct that “is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective.” Utah Code § 76-1-401, 402(2).[4]
¶ 11 When we tackle questions of statutory construction, our overarching goal is to implement the intent of the legislature. Marion Energy, Inc. v. KFJ Ranch P’ship, 2011 UT 50, ¶ 14, 267 P.3d 863 (“It is well settled that when faced with a question of statutory interpretation, ‘our primary goal is to evince the true intent and purpose of the Legislature.’” (citation omitted)). Our first undertaking in this regard is to assess the language and structure of the statute. Id. (“The best evidence of the legislature’s intent is ‘the plain language of the statute itself.’” (citation omitted)); In re Reinhart, 2012 UT 82, ¶ 17, 291 P.3d 228 (reviewing a “statute’s plain language and structure”).. “Often, statutory text may not be plain when- read in isolation, but may become so in light of its linguistic, structural, and statutory context.” Id. The reverse is equally true: words or phrases may appear unambiguous when read in isolation, but become ambiguous when read in context. This is why
we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters[,] avoid[ing] any interpretation which renders parts or words in a statute inopera *96 tive or superfluous in order to give effect to every word in the statute.
Monarrez v. Utah Dep’t of Transp., 2016 UT 10, ¶ 11, 368 P.3d 846 (internal quotation marks omitted). Indeed, “it is a ‘fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.’” Reno v. Koray, 515 U.S. 50, 56, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (citation omitted). This is why we look to context when, as here, “both sides offer conceivable constructions of the language in question.” Olsen v. Eagle Mountain City, 2011 UT 10, ¶ 9, 248 P.3d 465.
¶ 12 With this legal backdrop in mind, we turn first to Mr. Rushton’s argument that the phrase “single criminal objective” is broad enough to encompass an objective as broad as misappropriation of any money he had power over through Fooptube. We conclude that such a broad interpretation of the phrase “single criminal objective” would render the permissive joinder statute inoperative, which would violate our principles of statutory interpretation. Rather, we consider the totality of the circumstances, focusing in particular on the location where the crimes were committed, the nature of the offenses, whether the crimes involved different victims, and whether the defendant had the opportunity to deliberately engage in the next-in-time offense. Based on our analysis of those factors, we determine that Mr. Rush-ton’s conduct at issue in the tax case and in the wage case did not have a single criminal objective and thus was not part of a single criminal episode mandating joinder of the charges against him in a single prosecution.
I. MR. RUSHTON’S INTERPRETATION OF SINGLE CRIMINAL OBJECTIVE
¶ 13 Mr. Rushton argues that under a plain language analysis “single criminal objective” means all conduct that is “connected by a single criminal purpose, goal, or target! ] that the defendant’s conduct is intended to attain.” He further argues that misappropriate ing “money in the context of Fooptube,” no matter how or from whom, satisfies this definition.
¶ 14 We reject Mr. Rushton’s claim that his misappropriation qualifies as a single criminal objective for purposes of the mandatory joinder statute. Under our plain language principles of statutory construction, it is necessary to consider both the permissive joinder statute and the mandatory joinder statute when interpreting the phrase “single criminal objective.” We conclude that Mr. Rushton’s characterization of his behavior as a single criminal objective of misappropriation is too broad and would render the permissive joinder statute inoperative.
¶ 15 As the State correctly points out, when interpreting the phrase “single criminal objective,” we must consider both the permissive joinder statute and the mandatory joinder statute in order to ensure that our interpretation does not render the permissive joinder statute inoperative. See State, in re J.M.S., 2011 UT 75, ¶ 22, 280 P.3d 410 (stating that we interpret statutory provisions “in harmony with other statutes in the same and related chapters” (citation omitted)).
¶ 16 The relevant statutory provisions are as follows: The permissive joinder statute states that offenses “may be charged in the same indictment or information” if the offenses are “based on the same conduct or are otherwise connected together in their commission ... or ... alleged to have been part of a common scheme or plan.” Utah Code § 77-8a-l(l). The mandatory joinder statute states that “[wjhenever conduct may establish separate offenses under a single criminal episode ... a defendant shall not be subject to separate trials for multiple offenses.” Id, § 76-1-402(2). The phrase “single criminal episode” in the mandatory joinder statute is statutorily defined as “all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective.” Id. § 76-1-401. Based on our principles of statutory construction, we cannot interpret the language “single criminal objective” under the mandatory joinder statute to simply mean the same thing as conduct that is “connected together [with other conduct] in its commission” or “alleged to have been part of a common scheme or *97 plan” under the permissive joinder statute. Id. § 77-8a-1(1); see also State v. Martinez, 2002 UT 80, ¶ 8, 52 P.3d 1276 (“When examining the statutory language.... we avoid interpretations that will render portions of a statute superfluous or inoperative.” (internal quotation marks omitted)).
¶ 17 Mr. Rushtoris characterization of misappropriation as his single criminal objective conflates offenses that are “connected together in their commission” or are “part of a common scheme or plan” with offenses that are “closely related in time” and have a “single criminal objective.” Utah Code §§ 76-1-401, 77-8a-1(1). For example,[5] if we were to apply Mr. Rushtoris interpretation of misappropriation as a single criminal objective [6] to a situation where a bank robber robs multiple banks in a single day, the State would be required to join all the bank robbery charges in a single prosecution. Joinder would be mandatory despite the crimes having been committed in different locations, despite the crimes involving different victims, despite none of the crimes having been committed in order to advance the accomplishment of any of the others, and despite the robber likely having the opportunity to make conscious and knowing decisions between the commission of each of the different robberies—all of which are factors in the single criminal objective analysis we lay out below. In the ease at hand, “the facts adequately support the trial court’s determination that ... separate and distinct offenses were committed. To adopt [Mr. Rushtoris] interpretation of the statute would serve only to torture its clear wording to afford him the advantage of a single ... conviction.” State v. Ireland, 570 P.2d 1206, 1207 (Utah 1977).[7] Thus, we cannot read the phrase “single criminal objective” under the mandatory joinder statute so broadly without rendering the permissive joinder statute inoperative.
¶ 18 In addition, we reject the following arguments Mr. Rushton makes about the interpretation of statutes, and, in particular, the interpretation of the mandatory joinder statute. First, Mr. Rushton argues that interpreting statutes “in harmony with other statutes in the same chapter and related chapters” is a secondary rule of statutory interpretation, rather than part of a court’s plain language interpretation. State v. Harker, 2010 UT 56, ¶ 12, 240 P.3d 780 (citation omitted). As a result, he argues, since “the state has not suggested any debate about the plain meaning of the language,” we do not need to rely on “other interpretative tools,” like the so-called secondary rule of interpreting statutes in harmony with related chapters. We strongly disagree with Mr. Rushton on this point. Interpreting a statute “in harmony with other statutes in the same chapter and related chapters” is part of our plain language analysis. See id. (“[W]e read the plain language of [a] statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters.” (second alteration in original) (citation omitted)). Consequently, reading the “single criminal objective” language under the mandatory joinder statute in harmony with the permissive joinder statute constitutes a plain language interpretation of the mandatory joinder statute.
*98 ¶ 19 Mr. Rushton also argues that the permissive joinder statute is not a related chapter to the mandatory joinder statute. Therefore, he argues, the mandatory joinder statute.does not need to be read in harmony with the permissive joinder statute. He bases this argument oh the fact that the mandatory joinder statute, which is found under title 76, is not under the same title as the permissive joinder statute, which is found under title 77. We reject this argument. There is no requirement that related chapters, which must be interpreted in harmony with one another, be found under the same title of the Utah Code. Mr. Rushton himself points out nine different statutes in the Utah Code- that use the same definition of single criminal episode, many of which are found under different titles. Using his logic, we would have to declare those statutes that use the same definition of single criminal episode not related. This would be a real stretch. As a result, we conclude that even though the mandatory and permissive joinder statutes “do not share a common statutory title,” they are related chapters and must be interpreted in harmony with one another.
¶ 20 Finally, we disagree with Mr. Rush-ton’s assertion that the legislature wanted us to interpret the mandatory and permissive joinder statutes separately or in isolation from one another. We read the language in Utah Code section 76-1-401 that “[njothing in this part shall be construed to limit or modify the effect of Section 77-8a-l” differently than Mr. Rushton. He reads this language as prohibiting a narrow interpretation of the mandatory joinder statute. We, on the -other hand, read this language to support our conclusion that we may not read the mandatory joinder statute so. broadly as to render the permissive joinder statute inoperative. We may not construe or limit the effect of the permissive joinder statute, rendering it a nullity, by interpreting the “single criminal objective” language as broadly as Mr. Rushton wishes us to do.- As a result, we reject the idea that Utah Code section 76-1-401 somehow prevents, us from considering the permissive joinder statute in our plain language analysis of what “single criminal objective” means under the mandatory joinder statute.
¶21 We must interpret the mandatory joinder statute in harmony with the permissive joinder statute. Using a plain language analysis, we determine that Mr. Rushton’s interpretation of single criminal objective is overly broad and would render the permissive joinder statute inoperative. This result is contrary to our rules of statutory interpretation and thus we reject Mr. Rushton’s characterization of his single criminal objective!
II. THE CONCURRENCE’S INTERPRETATION OF THE MANDATORY JOINDER STATUTE
¶ 22 We also disagree with the interpretation of “incident to an attempt or accomplishment of a single criminal objective” proffered by the concurring opinion. The concurrence equates a “single criminal episode” with a single “crime.” Infra ¶59: The concurrence accordingly read's this language to cover only conduct that is “directly and immediately relat[ed] to ... an attempt or accomplishment" of another offense. Infra ¶62. The concurrence prefers its interpretation to a totality of the circumstances test for two reasons: (1) because it better respects the “operative language” of the statutory text and (2) because it is more predictable than a test requiring a district court to weigh multiple factors in deciding whether joinder is required. Infra ¶¶48-49. We disagree.
¶ 23 First, we- do not believe that the concurrence’s test comports with the plain meaning of the statutory text. See Olsen v. Eagle Mountain City, 2011 UT 10, ¶ 12, 248 P.3d 465 (in interpreting the' plain meaning of statutory text “[o]ur task ... is- to determine the meaning of the text given the relevant context of the statute (including, particularly, the structoe and language, of the statutory scheme)” (citation omitted)). In interpreting statutes, “[w]e presume the Legislature uses each word advisedly.” Meza v. State, 2015 UT 70, ¶ 18, 359 P.3d 592. Thus, we presume that if the legislature had intended the reading that the concurrence prefers, it would have defined a “single criminal episode” as “all conduct which is ... incident to an attempt or an accomplishment .of a single offense”—using a term that it specifically defined in the Utah" Criminal Code. Cf. *99 Utah Code § 76-1-601(7) (“ ‘Offense’ means a violation of any penal statute of this state.”). Instead, the legislature used the term “single criminal objective”—a term that connotes the goal or purpose of the offender’s criminal conduct, not merely another offense.[8] Id. § 76-1-401.
¶ 24 We are also doubtful that the concurrence’s proposed test is any more predictable than the totality of the circumstances test that we adopt—indeed, it may well be less predictable. The concurrence would have courts focus on whether one offense was “incident” to another, where “incident” is defined as “dependent on or appertaining to another thing: directly and immediately relating to or involved in something else though not an essential part of it.” Infra ¶60 n.6. But consider, for example, how this test would apply to a case where a defendant writes a computer program that in quick succession steals $80,000 from ten separate accounts belonging to ten separate clients of the same bank.
¶ 26 To make the hypothetical even more vivid, imagine that this defendant keeps a diary in which he specifically states that his objective was to steal $30,000 in small enough increments that (in his view) they were less likely to immediately trigger the bank’s anti-fraud measures and more likely to go undetected.
¶ 26 This should be an easy case. The state should not be allowed to bring serial prosecutions against a bank robber who has written a single computer program to steal from multiple bank accounts, and who admittedly has a single criminal purpose underlying each almost identical crime, (This example is not farfetched, and it can be multiplied. Imagine a hacker who simultaneously acquires unauthorized access to one million computers. The concurrence’s logic would in theory allow one million trials. We would not.)
¶ 27 But under the concurrence’s test it is not easy to predict whether each act of theft need be joined in the same trial. On the one hand, each act is a “choate crime” and each is logically independent of the other. This militates in favor of finding that each act need not be joined under the mandatory joinder statute. And the concurrence appears to believe that, under its test, the separate crimes need not be joined. See infra ¶¶67-69. But this is not obvious from the language of the concurrence’s test. Instead, it is arguable that each act of. theft was “directly and immediately relat[ed]” to the others (though not “essential” to them); after all, the bank robber admitted as much. Or imagine that the evidence conclusively shows (or the indictment pleads) that the bank robber pursued .any of the individual robberies only because he could pursue them all simultaneously (perhaps because if he had not been able to pursue them all he would have decided that the reward was not worth the risk). Under this hypothetical, it seems perfectly possible for a reasonable court to conclude that each robbery was not only “directly and immediately related]” to the others, but, arguably, even “dependent]” on them, too. Infra. ¶60 n.6. But it is equally possible for a reasonable' court applying the concurrence’s test to conclude that the robberies still were not “incident to” each other.
¶ 28 This is doubly troubling. As we have explained, the bank-robber hypothetical should be an easy case. But the concurrence’s test is challenged by it. Even worse, its outcome is unpredictable. And this unpredictability is not just going to arise at the periphery; it is a core feature of a test that requires a court to assess the degree to which one offense is “relat[edj” to another. As a practical matter, we cannot see how *100 courts can do this without ultimately considering a variety of factors that bear on the tightness of the nexus between the offenses. The ironic upshot, then, is that in seeking to promote predictability by eschewing a multi-factor test, the concurrence has articulated a standard that courts cannot implement without considering a multiplicity of factors—but, unlike the majority, the concurrence leaves courts without any guidance on what those factors should be.
¶ 29 The concurrence also faults our test for yielding “problematic results” in a solicitation case. It offers as an example “a bank robbery preceded by solicitation of an accomplice,” and it suggests that the totality of the circumstances test that we adopt might not require joinder of the solicitation and the bank robbery if, for example, the defendant and accomplice reside in different states. For then “the offenses could be said to arise in a ‘different geographic location[ ],’ ... the solicitation offense is ‘substantively different’ in ‘nature’ from bank robbery, ... and the defendant,” we may imagine, “had ‘the opportunity to make a conscious and knowing decision to engage in the next-in-time offense.’ ” Infra ¶65.
¶ 30 We are not as troubled by the possibility that the mandatory joinder statute might not require the solicitation to be joined with the bank robbery in this case, although we think that in many cases it will—especially given that, absent significant differences in the evidence that a prosecutor would otherwise introduce, a solicitation will often be similar in nature, and bound up with, the crime being solicited.
¶ 31 Moreover, it is not clear that the concurrence’s proposed test fares particularly well under this example either. Consider a variant on the concurrence’s solicitation example. A would-be bank robber draws up plans to rob a bank, which include the assistance of an accomplice. He solicits one of his friends to help him. Then, after further thought, the bank robber decides he will go it alone. He dismisses his friend and replans the bank robbery as a one-man job. Was the solicitation “incident to” the bank robbery under the concurrence’s test? Not obviously. It is far from clear that the solicitation “directly and immediately relat[ed] to” the bank robbery; after all, the bank robber changed his plans after the solicitation and decided to pursue the bank robbery alone. This is yet another example where the concurrence’s test fails to live up to its promise of predictability.
¶ 32 A final problem with the concurrence’s reading is that, in circumstances where it does clearly yield a single outcome, it reaches the wrong result. Consider this example:
Defendant was stopped by a highway patrolman in Beaver County for speeding. He pulled a gun, threatened the patrolman, relieved him of his revolver, locked him in the trunk of the patrol vehicle, shot holes in its two front tires, and left the scene in his own vehicle. He subsequently picked up two hitchhikers, showed them the revolver, and advised them of his having taken it from the patrolman. He further advised them that they need not stay in the car with him.
Defendant proceeded on to the adjoining County of Sevier, stopped to purchase fuel, and shortly thereafter police began following him at which time he informed the hitchhikers they were his hostages and held a gun on them. He was ultimately apprehended at a roadblock, Med and convicted in Sevier County for aggravated kidnapping of the hitchhikers, and was subsequently convicted in Beaver County of this offense of aggravated robbery for the taking of the patrolman’s revolver.
State v. Ireland, 570 P.2d 1206, 1206 (Utah 1977).
¶33 Under the concurrence’s logic, the aggravated kidnapping was plainly incident to the objective of successfully accomplishing the aggravated robbery and, therefore, the mandatory joinder statute required that the two offenses be joined. Yet we rightly held otherwise. Id. at 1207 (“In this case there was a distinct difference in time [and] location ... and the criminal objective of robbery was entirely different than that of kidnapping which was totally disconnected in time, place or purpose.”); see State v. Germonto, 868 P.2d 50, 60 (Utah 1993) (‘We ... [take] care to avoid a rigid rule mandating joinder whenever a defendant commits a crime to *101 avoid arrest for prior criminal activity ...” (citation omitted)); State v. Cornish, 571 P.2d 577, 578 (Utah 1977) (per curiam) (declining to hold that a failure to stop and an automobile theft were part of a single criminal episode because “[t]o treat them as a single criminal episode would mean that any crime a defendant commits to avoid arrest for prior criminal activity would be part of the same criminal episode”).
¶ 34 As we explain below, we believe there is a place for the concurrence’s test in the mandatory joinder analysis. But, for the foregoing reasons, we do not believe it should be the exclusive focus.
III. TOTALITY OP THE CIRCUMSTANCES
¶ 35 We have concluded that neither Mr. Rushton’s nor the concurrence’s interpretation respects the plain language of the joinder statutes. Mr. Rushton’s assertion that “single criminal objective” is so broad as to encompass the objective of misappropriation does violence to the statutory scheme by rendering the permissive joinder statute inoperative, and the concurrence’s contention that a “single criminal objective” is nothing more than a criminal “offense” assumes that the legislature chose to use a term it has not defined to mean a term it specifically defined in the criminal code. We therefore consider the totality of the circumstances, focusing on factors from oui case law,[9] to determine whether Mr. Rushton’s conduct at issue in the tax case and in the wage case had a single criminal objective.[10] See State v. Selzer, 2013 UT App 3, ¶ 26, 294 P.3d 617 (‘Whether or not there is a single criminal objective depends on the specific facts of the case viewed under ... the totality of 'the circumstances,” (alteration in original) (internal quotation marks omitted)). In making this determination, we consider, among other things, the location where the crimes were committed, the nature of the offenses (both the similarity in conduct and the extent to which one offense advances the accomplishment of another), whether the crimes involved different victims, and whether the defendant had the opportunity to deliberately engage in the next-in-time offense.[11] While *102 they are certainly not the only factors relevant to the mandatory joinder analysis, these factors are well-suited to advancing the twin purposes of the mandatory joinder statute: “(1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation,” Selzer, 2013 UT App 3, ¶ 22, 294 P.3d 617 (citation omitted). Applying our totality of the circumstances test, we conclude that Mr. Rushton’s conduct did not have a single criminal objective and we therefore affirm the court of appeals’ decision.
¶ 36 First, we consider “whether the offenses arose in different geographic locations.” United States v. Letterlough, 63 F.3d 332, 335 (4th Cir. 1995).[12] Unfortunately, there is insufficient evidence in the record to determine where Mr. Rushton’s tax crimes and wage crimes occurred. Mr. Rushton’s conduct may have occurred within the four walls of the business or where the payments were due. Regardless, this factor is not dis-positive. Courts in other jurisdictions have found offenses to constitute separate offenses based on the defendant’s having had time between the offenses and the opportunity to make a conscious, knowing decision to commit each offense, despite the offenses having been committed in the same location. See, e.g., United States v. Thomas, 381 Fed.Appx. 495, 505-08 (6th Cir. 2010). We agree. So even if we assume that Mr. Rushton committed both his tax crimes and his wage crimes at the same location, that factor is not dispos-itive. Therefore, we turn to the other factors to make our ultimate decision.
¶ 37 Second, we consider “whether the nature of the offenses was substantively different.” Letterlough, 63 F.3d at 335-36.[13] The tax crimes and the wage crimes were plainly different in nature. Each set of offenses involved different financial concepts and bodies of proof. For example, the tax offenses involved issues such as whether Mr. Rushton had improperly “co-mingle[d] funds,” whether he had prepared fraudulent tax returns, and whether he failed to file his personal income taxes. By contrast, the wage offenses involved whether Mr. Rushton had kept wages and retirement benefits he owed to his employees for himself. Similarly, Mr. Rush-ton’s tax crime charges arose out of an investigation by the Utah State Tax Commission, and Mr. Rushton’s wage crimes were independently under investigation by the Utah Labor Commission and the United States Department of Labor. Moreover, the prosecutor in Mr. Rushton’s tax case was apparently unaware of the wage crimes until after Mr. Rushton pleaded guilty to the tax offenses. And while there was some overlap in the statutes under which Mr. Rushton was charged in the wage and tax cases, the same statute may cover substantively different kinds of conduct.[14] For example, in State v. Gibson, 2009 UT App 108, 208 P.3d 543 and State v. Winward, 907 P.2d 1188 (Utah Ct. App. 1995), the defendants were both charged under Utah Code section 76-6-513, but their conduct was very different. In Gibson, the defendant was charged for opening fraudulent credit card accounts in her grandmother’s name, 2009 UT App 108, ¶ 2, 208 *103 P.3d 543, while in Winward, the defendant was charged for writing a fraudulent offer on a home, 907 P.2d at 1189-90. Thus, the fact that two charges are based on a single statute is not necessarily indicative of conduct of a similar nature. Given such differences in conduct, we are not troubled by the minor overlap in the statutory charges between the cases and do not see it as evidence of conduct constituting a single criminal objective.[15] We conclude that Mr. Rushton’s wage crimes are substantively different from Mr. Rushton’s tax crimes.
¶ 38 Third, we consider whether each offense involved “different victims.” Letterlough, 63 F.3d at 336.[16] Mr. Rushton’s tax ciimes and Mr. Rushton’s wage crimes clearly involved different victims. The victim of Mr. Rushton’s tax crimes was the government of the state of Utah, and the victims of Mr. Rushton’s wage crimes were the former employees of Pooptube. Because the victims in the two cases are. completely different, this factor weighs strongly in favor of a finding that Mr. Rushton’s conduct did not have a single criminal objective.
¶ 39 The final factor .we consider is Whether Mr. Rushton had “the opportunity to make a conscious and knowing decision to engage in” the next-in-time offense.[17] Id. at 337. There is some overlap in the time Mr. Rushton committed his tax crimes and the time he committed his wage crimes.[18] However, taxes are paid quarterly, and the paychecks for Fooptube employees were due monthly. See Utah Code § 34-28-3(1)(a) (“An employer shall pay the wages earned by an employee at regular intervals, but in periods no longer than semimonthly on days to be designated in advance by the employer as the regular payday.”). Thus, each crime would have been committed at a different point in time, and, therefore, Mr. Rushton would have had “the opportunity to make a conscious and knowing decision to engage in” the next-in-time offense, even if he committed some of his tax crimes in the same month as some of his wage crimes. Letterlough, 63 F.3d at 337. We conclude -that the periods of time between Mr. Rushton’s quarterly commission of his tax crimes and Mr. Rushton’s commission of his wage crimes gave Mr. Rushton adequate opportunity to “make a conscious and *104 knowing decision to engage in” the next-in-time offense. Id.
¶ 40 Having conducted this fact-intensive analysis, we determine, based on the totality of the circumstances, that Mr. Rushton’s tax crimes and wage crimes did not have a single criminal objective. Id. at 336 (“Courts have applied these factors independently, or in conjunction, to decide that a defendant’s similar offenses are actually separate and distinct from one another. In essence, if any one of the factors has a strong presence,- it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes.” (footnote omitted)). Three of the four factors weigh against a finding of a single criminal objective, and the only other factor (the location where the crimes were committed) is not dispositive. See supra ¶36. Moreover, no other considerations argue in favor of finding a single criminal objective in this case. We accordingly hold that Mr. Rushton’s conduct at issue in the tax case and in the wage case did not have a single criminal objective and that the State therefore was not required to join the charges for Mr. Rushton’s tax crimes and the charges for his wage crimes in a single prosecution.
¶ 41 We close with a note on the appropriateness of a totality of the circumstances test in this case. For policy reasons, the concurrence takes us to task for adopting a totality of the circumstances test in the mandatory joinder context. Infra ¶¶71-73. It points out that multi-factor tests are not as predictable as bright-line legal rules, and it notes that the policy consequences of a misapplication of our multi-factor test could potentially be “drastic”—if a prosecutor fails to join a count that was subject to mandatory joinder, the result will be “the preclusion of a criminal claim without any consideration of the merits.” Infra ¶¶71-72.
¶ 42 While we are hesitant to conclude that predictability is the overriding value in law— other important values are fidelity to text and ensuring that the law does not purchase precision at the cost of anomalous or unjust results—we agree with the concurrence that courts must always be attuned to the risk that a test might prove difficult to apply. But we think the risk of unpredictability is low here. Many other jurisdictions use multi-factor tests to determine whether mandatory joinder is required, see supra ¶35 n.ll, and we have been given no reason to think that the law in those jurisdictions is unpredictable. Moreover, as we have explained, it is not clear that the concurrence’s test would be any more predictable than ours—indeed, it could well be less predictable. See supra ¶24.
¶ 43 As for the concurrence’s concern about the “drastic consequence[ ]” of criminal claim preclusion due to a prosecutor’s failure to join counts, infra ¶72, it is fair as far as it goes, but the analysis is fatally incomplete. The policy question in this case is not simply whether we should make it harder or easier for prosecutors to prosecute all the offenses that a defendant might fairly be charged with. Instead, the policy question is comparative: whether it is more important to prevent the “drastic consequence[ ]” of criminal claim preclusion due to the prosecutor’s failure to join counts or to prevent the “drastic consequence[ ]” of serial prosecutions when claims otherwise ought to have been joined. While this consideration is secondary to the textual and doctrinal factors that have persuaded us to adopt the test we announce, we think that it will generally be less costly for a prosecutor to over-join counts than it is for a defendant to defend against serial prosecutions.
¶ 44 As a final note, litigants in a criminal case—both prosecutor and defendant—may always move the district court to join counts that the law does not require be joined and to sever counts that are otherwise subject to mandatory joinder. See Utah R. Crim. P. 34 (allowing motions to consolidate criminal cases); Utah R. Crim. P. 9.5(l)(b) (allowing separation of offenses otherwise required to be joined “for good cause shown”). Thus, neither the concurrence’s nor our test is liable to change the ultimate joinder determination in the vast majority of criminal cases. We agree with the concurrence that “the practical effect of [its] test is not .,. sweeping.” Infra ¶69. Nor, for that matter, is the practical effect of ours. But, at the margin, the test for mandatory joinder that we adopt today will yield results that are not only more faithful to text and structure, but fairer and more rational as well.
*105 CONCLUSION
¶ 45 In conclusion, we reject Mr. Rushton’s characterization of misappropriation as his single criminal objective because such a definition is too broad and would render the permissive joinder statute inoperative. Instead, we consider the totality of the circumstances to determine whether Mr. Rushton’s conduct had a single criminal objective. Because Mr. Rushton’s tax crimes and wage crimes were substantively different and involved different victims, and because Mr. Rushton had the “opportunity to make a conscious and knowing decision to engage” in the next-in-time offense, we conclude that Mr. Rushton’s criminal conduct did not have a single criminal objective. See United States v. Letterlough, 63 F.3d 332, 337 (4th Cir. 1995). Because Mr. Rushton’s conduct did not have a single criminal objective, it was not a single criminal episode under the mandatory joinder statute. Therefore, we hold that the mandatory joinder statute did not require joinder of Mr. Rushton’s tax crimes and wage crimes in a single prosecution, and we affirm the court of appeals’ decision upholding the denial of Mr. Rushton’s motion to dismiss.

. Because there was no single criminal objective, we need not and do not reach the issue regarding whether the conduct was “closely related in time." Utah Code § 76-1-401. The lack of a single criminal objective alone is dispositive of whether the conduct constituted a single criminal episode for purposes of the mandatory joinder statute.

. The State charged Mr. Rushton with failing to file Fooptube’s quarterly tax returns for 2007 and the first two quarters of 2008 (count 1); co-mingling funds or creating false documents with the intent to evade tax withholding obligations for 2007 through 2008 (count 2); failing to remit employee taxes for 2007 and the first two quarters of 2008 (count 3); issuing fraudulent W-2 forms and withholding tax statements from employees in 2008 (count 4); failing to "file personal income tax returns for the tax year(s) 2005, 2006 and/or 2007” (count 5); and, based on the foregoing predicate offenses, engaging in a pattern of unlawful activity in violation of Utah Code section 76-10-1603 (count 6).

.The State charged Mr. Rushton with the following twenty counts, all of which are allegedly related to Fooptube employee compensation or retirement arrangements and based on conduct that took place in 2008 or 2009: communications fraud (counts 1 and 2); unlawful dealing of property by a fiduciary (counts 3 and 4); theft of services (counts 5 and 6); failure to pay wages (counts 7 through 19, as alternatives to counts 5 and 6); and engaging in a pattern of unlawful activity, in violation of Utah Code section 76-10-1603 (count 20).

. For the mandatory joinder statute to operate as a bar, the offenses must also be "within the jurisdiction of a single court ... and ... known to the prosecuting attorney at the time the defén-dant is arraigned on the first information or indictment.” Utah Code § 76-1-402(2). In addition, the trial court retains the authority to order separate trials "to promote justice.” Id. These circumstances are not at issue here and we therefore do not discuss them further.

. For the purposes of this hypothetical example, we assume that the offenses meet the "closely related in time” factor, another necessary component for concluding that conduct was part of a single criminal episode. See Utah Code § 76-1-401.

. Mr. Rushton quotes the definition of "misappropriation” from Black’s Law Dictionary as "[t]he application of another’s property or money dishonestly to one’s own use.” Alternatively, he states that misappropriation is ”steal[ing] money to which [a person] was not entitled.”

. See also People v. Perez, 23 Cal.3d 545, 153 Cal.Rptr. 40, 591 P.2d 63, 68 (1979) (en banc) (“Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute’s purpose to insure that a defendant’s punishment will be commensurate with his culpability. It would reward the defendant who has the greater criminal ambition with a lesser punishment.” (citation omitted)); State v. Bauer, 792 N.W.2d 825, 830 (Minn. 2011) ("Our case law recognizes that 'the criminal plan of obtaining as much money as possible is too broad an objective to constitute a single criminal goal....' ” (citation omitted)).

. The concurrence maintains that we "misstate! ] [its] standard” because, on its interpretation of the mandatory joinder statute, ”[t]he use of the term 'objective[1] has significance that is not as clearly conveyed by the term 'offense.' ” Infra 1ÍS3 n.l. Specifically, the word is supposed to convey that "[t]he conduct at issue must be incident to the acts undertaken in attempting or accomplishing the relevant 'objective' crime.” Id. We fail to see how the phrase "the relevant 'objective' crime" is meaningfully different, or any different, from the term "offense.” Indeed, the concurrence appears to agree with us; noting elsewhere that, under its test, "[e]ither of two crimes could be the 'objective.'" Infra ¶61 n,8. In any event, the plain meaning of a "single criminal objective” connotes a criminal aim or purpose that is broader than a single criminal offense.

. Many of the cases that we cite in the following footnotes discuss a previous version of our mandatory joinder statute. Utah Code § 76-1-402 (1978), That statute used the same statutory definition of single criminal episode as the current mandatory joinder statute, including the “single criminal objective" language. See Utah Code § 76-1-401.

. The concurrence faults us for failing "to connect [our] multi-factored test with the language of the statute.” Infra ¶53 n.l. It is true that our test does not merely mirror the language of the statute. But it is nonetheless more faithfal to the text and structure of the statute than the alternatives; it harmonizes the structure of the mandatory and permissive joinder statutes without assuming that the legislature chose to use a unique phrase to mean the same thing as a single term that it had already defined. And it is faithful to longstanding precedent in á way the concurrence’s test is not. See, e.g., supra ¶¶32-33.
The concurrence also worries that the test we announce today will be misapplied in the same way as the test this court announced in State v. Shickles, 760 P.2d 291, 295-96 (Utah 1988), where we identified factors courts should consider in evaluating the admissibility of evidence under rule 403 of the Utah Rules of Evidence. Infra ¶53 n.2. But the problem with the test we announced in Shickles is that it was partially inconsistent with the language of rule 403 and purported to replace rule 403's own balancing test with a different test. By contrast, the test we announce today is not inconsistent with the mandatory joinder statute nor does it replace a statutory test with another test of our own making. Instead, it giVes the trial courts guidance on how to determine whether two offenses are "incident to an attempt or an accomplishment of a single criminal objective.” Utah Code § 76-1-401.

.Other jurisdictions also consider these same factors in confronting similar issues. See, e.g., State v. Bauer, 792 N.W.2d 825, 828 (Minn. 2011) (considering the "different locations” of the crimes in determining whether conduct constituted a single behavioral incident); State v. Condo, 342 Mont. 468, 182 P.3d 57, 61 (2008) (considering the substantive nature .of a negligent vehicular homicide charge and a DUI charge in determining the crimes "[did] not share the same purpose, motivation, and criminal objective”); State v. Stevens, 179 Ohio App.3d 97, 900 N.E.2d 1037, 1040-41 (2008) (considering the presence of "multiple victims” in determining whether a robbery of several people in a single home constituted a single objective); State v. Nguyen, 95 Or.App. 653, 771 P.2d 279, 281 (1989) (rejecting the argument that a defendant's acts constituted a single criminal episode because "[a]lthough the charges were identical, they did not arise from ‘continuous and uninterrupted’ conduct”).'

. See, e.g., State v. Ireland, 570 P.2d 1206, 1207 (Utah 1977) ("In this case there was a distinct difference in ... location, (two separate counties) and the ... kidnapping ... was totally disconnected in ... place.”).

. See, e.g., State v. Germonto, 868 P.2d 50, 60-61 (Utah 1993) (holding that "the offenses [of murder, robbery, and forgery] were similar in nature [and] design” as "part of an effort to acquire [the victim’s] property”); State v. McGrath, 749 P.2d 631, 633 (Utah 1988) (noting a "similarity of the offenses charged” and concluding joinder was proper); Hupp v. Johnson, 606 P.2d 253, 254 (Utah 1980) (holding that the "separate, independent offenses ... were entirely unrelated to each other” and thus "were not committed to accomplish a 'single criminal objective' ”); State v. Cornish, 571 P.2d 577, 578 (Utah 1977) (concluding that "although the testimony given may overlap, the offenses are different and .,. distinct” and that "the proof requirements are different”); Ireland, 570 P.2d at 1207 (holding that "[the] robbery was entirely different than ... [the] kidnapping which was totally disconnected in ,,. purpose").

.The tax crimes Mr. Rushton was charged with fall under Utah Code sections 76-8-1101, 76-6-513, 76-10-1801, and 76-10-1603. The wage crimes Mr. Rushton was charged with fall under Utah Code sections 76-10-1801, 76-10-1603, 76-2-202, 76-6-513, 76-6-409, and 34-28-12.

. We agree with the concurrence that whether one offense furthers the accomplishment of another is one, but not the only, important factor in the mandatory joinder analysis. Cf. infra ¶¶58, 60, 64 (explaining how to assess whether one . offense advances the accomplishment of another). Here, because the wage offenses were not undertaken in furtherance of the tax offenses, nor vice versa, neither advanced the accomplishment of the other.

. See, e.g., Germonto, 868 P.2d at 60 (finding a single criminal objective when the separate offenses “involved the same victim”).

. The concurrence contends that this factor "double-count[sj the timing element.” Infra ¶65 n.9 (noting that the statute defines a "single criminal episode” as comprising two components: the offenses must be "closely related in time" and they must be "incident to an attempt or an accomplishment of a single criminal objective” (quoting Utah Code § 76-1-401)). We disagree. The threshold requirement that the offense be "closely related in time” must be satisfied even if application of the totality of the circumstances test otherwise indicates that the offenses are incident to ah attempt or accomplishment of a single criminal objective. The "closely related in time” element serves one purpose: preventing the mandatory joinder of any offenses, no matter how otherwise related they are, that occurred too far apart. The factor we discuss here—whether the defendant had the opportunity to deliberate on whether to engage in the next-in-time offense—on the other hand, helps the court determine whether the two-offenses have the same criminal objective. While there will no doubt often be overlap between the "closely related in time” analysis and this factor, a degree of overlap is not the same thing as double-counting. Indeed, overlap is often a feature of legal tests. See, e.g., Doggett v. United States, 505 U.S. 647, 651-52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (describing the "delay before trial” element of the test for whether a defendant's constitutional right to a 'speedy trial has been violated as "a double enquiry”: "[sjimply .to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial’ delay. ... If die accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (citing Barker v. Wingo, 407 U.S. 514, 530-34, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972))).

.Mr. Rushton’s tax crimes took place from 2005 to 2008, and Mr. Rushton’s wage crimes took place during 2008 and 2009.

. The majority professes general obeisance to the "plain meaning" of the statutory text. See supra ¶23. But, tellingly, the court nowhere seeks to connect its multi-factored test with the language of the statute. That test is weaved of whole cloth having nothing to do with the terms of section 76-1-401. So the majority is in no position to claim the high ground of "plain meaning” textu-alism.
The majority's criticism, moreover, is rooted in a faulty premise. It says that "if the legislature had intended” the standard I propose, it “would have” done so explicitly. Supra ¶23. But we have rejected such syllogisms repeatedly. We have noted that "the legislature's failure to speak more clearly tells us little or nothing about its intent in using terms that are less clear.” Irving Place Assocs. v. 628 Park Ave., LLC, 2015 UT 91, ¶ 16, 362 P.3d 1241. And we have observed that "[i]n any matter of statutory construction of any consequence, it will almost always be true that the legislature could have more clearly repudiated one party's preferred construction." Id. (quoting Hill v. Nakai (In re Estate of Hannifin), 2013 UT 46, ¶ 25, 311 P.3d 1016). We have also explained that " 'the converse is almost always true as well.’ ” Id. (alteration in original) (citation omitted). For that reason, we have said that " '[t]he legislature's failure to speak more clearly’ yields no basis for interpreting the ambiguous terms it voted into law.” Id.) see also Craig v. Provo City, 2016 UT 40, ¶ 38, 389 P.3d 423 ("It is usually quite beside the point that the legislature 'knows how' to speak more explicitly. That is another way of saying that the legislature could have spoken more clearly. And typically that gets us nowhere." (footnote omitted)). That is all the majority is saying here. And in any event the legislature’s failure to adopt a clearer standard does not mean that it preferred the multi-fac-tored balancing approach favored by the majority. Again, nothing in the text supports the factors articulated by the court.
The court’s argument also misstates my standard. I am not simply "equat[ing] a 'single criminal episode’ with a single ‘crime.’ " Supra ¶22. The use of the term "objective” has significance that is not as clearly conveyed by the term "offense." The word "objective” identifies the reference point for a court's "incident to” analysis. The conduct at issue must be incident to the acts undertaken in attempting or accomplishing the relevant "objective” crime. The term "objective” thus aids—rather than hinders—a proper understanding of the analysis required by the statute.