**2022 UT 7**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner*,

*v.*

LANDON SISNEROS,
*Respondent*.

No. 20200455-SC
Heard October 18, 2021
Filed February 10, 2022

On Certiorari to the Utah Court of Appeals

Second District, Ogden
The Honorable Joseph M. Bean
No. 171901921

Attorneys:

Sean D. Reyes, Att'y Gen., Lindsey Wheeler, Asst. Solic. Gen., Utah
Attorney General, Rachel Snow, Weber County Attorney's Office,
for petitioner

Emily Adams, Cherise Bacalski, Freya Johnson, Bountiful,
for respondent

JUSTICE HIMONAS authored the opinion of the Court in which CHIEF
JUSTICE DURRANT, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE filed a separate opinion concurring in
party and concurring in the judgment.

CHIEF JUSTICE DURRANT filed a concurring opinion.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 The Double Jeopardy Clause of the Fifth Amendment to
the United States Constitution protects a defendant from being
subjected to multiple prosecutions for the same offense. Utah

extends this protection even further—protecting, by statute, a defendant from multiple prosecutions for *different offenses* committed as part of a single criminal episode. *See* UTAH CODE §§ 76-1-401 to -403 (Single Criminal Episode Statute); *see also State v. Ririe*, 2015 UT 37, ¶ 6, 345 P.3d 1261.

¶2   In this case, we are asked to interpret the confines of Utah's Single Criminal Episode Statute as they relate to the multiple prosecutions of defendant Landon Sisneros for the robbery and theft of a used car. Sisneros argues that the State violated the Single Criminal Episode Statute by prosecuting him in Weber County for aggravated robbery after he had already been convicted of theft by receiving in Utah County for conduct arising under the same criminal episode. The court of appeals agreed and dismissed the Weber County charge.

¶3   The State now appeals, arguing that Sisneros's offenses were not part of a single criminal episode because they involved different victims, and, in any event, the Single Criminal Episode Statute does not apply because the district court in Utah County did not have jurisdiction to hear both offenses. We reject the State's arguments, and we affirm the court of appeals' decision to dismiss the Weber County charge of aggravated robbery against Sisneros.

¶4   It is difficult to imagine a more obvious single criminal episode than stealing a car and driving away with it. While the offenses for which Sisneros was charged may have involved separate victims, the totality of the circumstances demonstrates that the overarching criminal objective behind Sisneros's conduct was the same: namely, to steal a car. Likewise, even though Sisneros committed the theft offense across multiple jurisdictions, the clear terms of the Single Criminal Episode Statute dictate that the State should have brought the charges in a court with jurisdiction over both offenses. Neither party disputes that the district courts in Weber County had jurisdiction over both offenses in question. Accordingly, we find that the conviction of Sisneros in Utah County for theft by receiving barred the State's subsequent prosecution of Sisneros in Weber County for aggravated robbery.

## BACKGROUND

¶5   The following facts are undisputed. On August 11, 2017, Sisneros stole a used car in Weber County. The owner of the car (the Son) had arranged for Sisneros to meet the Son's father (the Father) for a test drive. After the test drive, Sisneros decided to keep the car without paying for it. The Father chased Sisneros and jumped on the hood of the car, yelling at Sisneros not to take the

car. Sisneros motioned for the Father to get out of the way, revved the engine, and then hit the Father with the car—bruising the Father's knee. Sisneros then drove the car off to Utah County.

¶6   The next day, the Orem Police Department found the car in Utah County—abandoned, empty, and locked. The Orem Police arrested Sisneros and informed the police in Weber County of the arrest. Sisneros admitted to the Orem Police that he stole the Son's car and that he threw the car's keys out the window near a highway overpass.

¶7   On August 16, 2017, the Utah County Attorney's Office charged Sisneros with theft by receiving stolen property and obstruction of justice. On August 22, 2017, the Weber County Attorney's Office charged Sisneros with aggravated robbery. Sisneros pleaded guilty to the felony theft by receiving and obstruction of justice charges in Utah County's Fourth District Court.

¶8   Nearly one year later, Weber County prosecutors chose to move forward with a second prosecution of Sisneros for aggravated robbery in Weber County's Second District Court. Sisneros moved to dismiss this charge on the ground that it was barred by the Single Criminal Episode Statute. The district court denied Sisneros's motion. After the district court's ruling, Sisneros entered a conditional guilty plea to aggravated robbery, reserving his right to appeal pursuant to rule 11(j) of the Utah Rules of Criminal Procedure.

¶9   The court of appeals reversed the district court's denial of Sisneros's motion to dismiss, finding that the Weber County charge of aggravated robbery was, in fact, barred by the Single Criminal Episode Statute. *State v. Sisneros*, 2020 UT App 60, ¶ 1, 464 P.3d 180. The State appealed, and we granted certiorari to consider the merits of the State's position.

## STANDARD OF REVIEW

¶10 On certiorari, "we review the decision of the court of appeals and not that of the district court." *State v. Hansen*, 2002 UT 125, ¶ 25, 63 P.3d 650 (citation omitted). We review "the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. Marquina*, 2020 UT 66, ¶ 24, 478 P.3d 37 (citation omitted).

## ANALYSIS

¶11 The Single Criminal Episode Statute bars the State from subjecting a defendant to "separate trials for multiple offenses"

that arise "under a single criminal episode" when "[t]he offenses are within the jurisdiction of a single court" and "are known to the prosecuting attorney at the time the defendant is arraigned on the first information or indictment." UTAH CODE § 76-1-402(2). If a defendant has been prosecuted and convicted "for one or more offenses arising out of a single criminal episode," the State is barred from prosecuting the defendant again "for the same or a different offense arising out of the same criminal episode" when "the subsequent prosecution is for an offense that was or should have been tried under Subsection 76-1-402(2)." *Id.* § 76-1-403(1).

¶12 In other words, for Sisneros to succeed in his motion to dismiss his criminal charge on the grounds that it is barred by his prior prosecution under the Single Criminal Episode Statute, he must establish:

(1) The prior prosecution and subsequent charge arose under a "single criminal episode," *id.* § 76-1-401;

(2) The prior charge and subsequent charge were "within the jurisdiction of a single court," *id.* § 76-1-402(2)(a);

(3) At the time of his arraignment on the prior charge, the prosecuting attorney knew of the other potential charge, *id.* § 76-1-402(2)(b); and

(4) The prior charge resulted in a conviction,[1] *id.* § 76-1-403(1)(b)(ii).

¶13 The court of appeals dismissed the State's subsequent charge of aggravated robbery against Sisneros based upon findings that all four of these conditions were satisfied. On certiorari, the State challenges the court of appeals' findings on the first two conditions only—namely, whether the two offenses for which Sisneros was charged arose under a "single criminal episode" and whether they were "within the jurisdiction of a

---

[1] While not relevant to the facts in this case, a defendant could also show that the prior charge resulted "in acquittal," was "improperly terminated," or "was terminated by a final order or judgment for the defendant that has not been reversed, set aside, or vacated and that necessarily required a determination inconsistent with a fact that must be established to secure conviction in the subsequent prosecution." UTAH CODE § 76-1-403(B)(i), (iii), (iv).

4

single court." As explained further below, we affirm the decision of the court of appeals and find that both offenses arose from a single criminal episode and that both offenses were within the jurisdiction of a single court.

## I. BOTH OFFENSES AROSE FROM A SINGLE CRIMINAL EPISODE

¶14 The Single Criminal Episode Statute sets forth a two-prong definition of "single criminal episode." *See* UTAH CODE § 76-1-401. First, the offenses must be "closely related in time." *Id.* Second, the offenses must be "incident to an attempt or an accomplishment of a single criminal objective." *Id.* We find that both prongs are satisfied.

¶15 On the first prong, there is no question, and the parties do not dispute, that both offenses were "closely related in time." Sisneros intended to deprive the Son of the used car the moment he took it from the Father in Weber County. In so doing, Sisneros committed the theft by receiving offense at the exact same time as the aggravated robbery offenses. *See* UTAH CODE § 76-6-408(2) ("A person commits theft if the person receives, retains, or disposes of the property of another knowing that the property is stolen, or believing that the property is probably stolen . . . intending to deprive the owner of the property."); *id.* § 76-6-302(1) ("A person commits aggravated robbery if in the course of committing robbery, he . . . takes or attempts to take an operable motor vehicle.").

¶16 On the second prong, whether Sisneros's theft by receiving and aggravated robbery offenses were both "incident to an attempt or an accomplishment of a single criminal objective" is a question of fact that must be viewed under the totality of the circumstances.[2] *See State v. Rushton*, 2017 UT 21, ¶¶ 10, 12, 395 P.3d

---

[2] Utah courts analyze questions of fact under the totality of the circumstances in a variety of criminal law contexts. *See, e.g.,* *State v. Baker*, 2010 UT 18, ¶ 17, 229 P.3d 650 (analyzing the reasonableness of the length and time of a traffic-stop detention under the totality of the circumstances); *State v. Mabe*, 864 P.2d 890, 892 (Utah 1993) (determining whether a confession was voluntary under the totality of the circumstances); *State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650 (analyzing consent to an encounter with police under the totality of the circumstances); *State v. Case*, 884

(continued . . .)

92; *see also State v. Selzer*, 2013 UT App 3, ¶ 26, 294 P.3d 617 ("Whether or not there is a single criminal objective depends on the specific facts of the case viewed under . . . the totality of the circumstances." (alteration in original) (citation omitted) (internal quotation marks omitted)). In *Rushton*, we articulated several non-exhaustive factors our courts have utilized to analyze whether a defendant's conduct was "incident to an attempt or an accomplishment of a single criminal objective." *Rushton*, 2017 UT 21, ¶¶ 1, 3. In particular, we instructed courts to examine "the location where the crimes were committed, the nature of the offenses . . ., whether the crimes involved different victims, and whether the defendant had the opportunity to deliberately engage in the next-in-time offense." *Id.* ¶ 3. We articulated these factors with the intended purpose of helping courts apply the statutory definition of single criminal episode reasonably—and to "evince the true intent and purpose of the Legislature." *Id.* ¶ 11 (quoting *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863).[3]

---

P.2d 1274, 1276 (Utah Ct. App. 1994) (determining whether articulable facts supported reasonable suspicion under the totality of the circumstances); *City of Orem v. Henrie*, 868 P.2d 1384, 1388 (Utah Ct. App. 1994) (basing the determination of exigent circumstances for warrantless search on the totality of the circumstances).

[3] In his concurring opinion, Justice Lee reiterates many of the concerns he raised in his concurring opinion in *Rushton*. Specifically, he argues that we should retract the totality-of-the-circumstances test and replace it with an ostensibly more straightforward test. *See infra* ¶ 36. Nevertheless, Justice Lee's alternative test does not change the outcome of this case, and as a general rule, our court "decline[s] to disrupt established precedent unnecessarily." *State v. Leyva*, 951 P.2d 738, 743 (Utah 1997); *see also Waite v. Utah Lab. Comm'n*, 2017 UT 86, ¶ 32, 416 P.3d 635 (finding it inappropriate to overturn prior precedent where a competing interpretation of the law would not yield a different result). Moreover, as the State has forcefully pointed out, we did not grant certiorari on whether to overturn *Rushton's* totality-of-the-circumstances test, and Sisneros has done none of the heavy lifting required to overturn precedent under the factors set forth in *Eldridge v. Johndrow*, 2015 UT 21, ¶ 22, 345 P.3d 553. *See Baker v. Carlson*, 2018 UT 59, ¶ 16 n.3, 437 P.3d 333 (finding parties' "failure

(continued . . .)

¶17 Applying these factors to the facts of this case, we find that the theft by receiving and aggravated robbery offenses were both incident to Sisneros accomplishing the single criminal objective of stealing the Son's car. Both offenses began at the same location in Weber County where Sisneros took the car from the Father after the test drive. And because both offenses began at the same time, Sisneros did not have the opportunity to make a conscious and knowing decision to engage in one offense after the other. Moreover, the nature of both offenses is substantively similar. Both offenses require the State to prove that Sisneros unlawfully took and retained the car. Similarly, Sisneros's conduct in committing both offenses overlapped, as Sisneros needed to take the car from the Father's possession in order to ultimately deprive the Son (the rightful owner) of the car.

¶18 The State urges us to defy this inevitable conclusion and instead hold that the theft and robbery offenses cannot be considered part of the same criminal objective because each offense had a different victim. The State points to the underlying criminal statutes for both offenses to make this point. In the State's view, the Father was the victim of the aggravated robbery offense because Sisneros used "means of force or fear" against the Father in order to take the car from his immediate possession, *see* UTAH CODE § 76-6-301(1)(a), and the Son was the victim of the theft by receiving offense because the Son was the owner of the car, *see id.* § 76-6-408(2). Because the offenses involved different victims, the State argues that Sisneros formed separate criminal objectives: first, to take the car from the Father, and second, to keep the car from the Son.

¶19 Furthermore, the State argues that the court of appeals used the incorrect definition of "victim" when it analyzed whether the theft and robbery offenses were incident to a single criminal

---

to adequately address either of the *Eldridge* factors" "fatal to their call to abandon" prior precedent). In fact, no party in this case has argued that we should adopt Justice Lee's proposed test for determining what constitutes conduct incident to a single criminal objective. While we believe that Justice Lee's concurring opinion continues a healthy debate over *Rushton*, "[w]e should not conclude this debate by overruling precedent in a case where it is unnecessary to reach the issue, and then *sua sponte* replace that precedent with a new interpretation." *See Waite*, 2017 UT 86, ¶ 33.

objective. The court of appeals found that the Son was a common victim to both offenses because, under the Crime Victims Restitution Act, a "victim" includes "any person or entity . . . who the court determines has suffered pecuniary damages as a result of the defendant's criminal activities." *See State v. Sisneros*, 2020 UT App 60, ¶ 24, 464 P.3d 180 (citing UTAH CODE § 77-38a-102(6), 14(a) (repealed 2021)).[4] The State contends that, for purposes of determining who the victim is for a single criminal objective analysis, the statutory language in the underlying statute is determinative—not the Restitution Act's definition of "crime victim." According to the State, the definition of "crime victim" under the Restitution Act is too broad, and it would expand exponentially the number of crimes that would be considered to have a single criminal objective. As such, the State asks us to reverse the court of appeals' decision and to clarify that only the specific victims from the underlying charging statutes should be considered when determining whether separate offenses were incident to a single criminal objective.

¶20 We do not consider the disagreement over the definition of "victim" to be material for purposes of determining whether Sisneros's conduct had a single criminal objective. Courts can—and should—consider multiple ways in which individuals can be considered a victim of a defendant's conduct when analyzing whether certain offenses arise under a single criminal objective. Here, the fact that there were different victims under the charging statutes weighs against finding a single criminal objective, but the fact that the Son was a common victim to both offenses under the Restitution Act weighs in favor of finding a single criminal objective.

¶21 Importantly, even if we were to agree with the State that the victims of Sisneros's offenses were necessarily different, we would still hold that both offenses were part of a single criminal objective. While multiple victims can sometimes indicate distinct criminal objectives, this is not always the case. For example, in

---

[4] After the court of appeals' decision, the Utah Legislature slightly revised the definition of "victim" under the Restitution Act, to state: "'Victim' means any person who has suffered pecuniary damages that are proximately caused by the criminal conduct of the defendant." *See* UTAH CODE § 77-38b-102(15)(a). Our analysis is the same under this revised definition.

*State v. Bair*, 671 P.2d 203 (Utah 1983), we held that a defendant's theft-related offenses were both part of a single criminal episode even though the stolen property belonged to multiple victims because the defendant obtained possession of the property at the same time. *Id.* at 207–08. Similarly, in *Rushton*, we suggested a hypothetical where a bank robber wrote a single criminal program to steal from multiple bank accounts. *See Rushton*, 2017 UT 21, ¶¶ 24–26. Even though the hypothetical involved multiple offenses with different victims, we explained that "[t]he state should not be allowed to bring serial prosecutions" against the bank robber. *Id.* ¶ 26. In the present case, as with *Bair* and the hypothetical in *Rushton*, the totality of the circumstances dictates that Sisneros's offenses were all part of a single criminal objective, even assuming the offenses involved different victims.[5] *See supra* ¶ 17.

¶22 In summary, both offenses for which Sisneros was charged were "closely related in time." *See* UTAH CODE § 76-1-401. Sisneros committed the theft by receiving offense at precisely the same time he committed the aggravated robbery offense. And the totality of the circumstances indicates that both offenses were "incident to an

---

[5] Sisneros argues that the State's "hyper-technical analysis" of the *Rushton* factors warrants amending the totality-of-the-circumstances test by adding a "functional analysis" that considers how different victims relate to one another with respect to the fulfillment of a defendant's criminal objective. Nevertheless, amending the totality-of-the-circumstances test is unnecessary here because the State's "hyper-technical analysis" focuses on only one of the factors in the totality-of-the-circumstances analysis. In *Rushton*, we stated that *all facts* under the *totality* of the circumstances must be considered when determining whether a defendant had a single criminal objective. *See Rushton*, 2017 UT 21, ¶¶ 3, 35–39. Moreover, Sisneros's proposed amendment to the totality-of-the-circumstances test is unhelpful. The totality-of-the-circumstances test is intended to guide courts in determining the factual question of whether certain conduct is "incident to an attempt or an accomplishment of a single criminal objective." *See id.* ¶ 12 (citing UTAH CODE § 76-1-401). Under Sisneros's proposed test, a court would already have to know the defendant's criminal objective in order to analyze how different victims relate to each other with respect to the fulfillment of this objective. In other words, Sisneros's proposed test begs the question.

attempt or an accomplishment of a single criminal objective." *Id.* Sisneros committed both offenses with the singular objective of stealing a car. Accordingly, we conclude that the theft by receiving and the aggravated robbery offenses both arose under a single criminal episode.[6]

---

[6] Justice Lee argues in his concurring opinion that we can reach this same conclusion by referring only to the "controlling text of the statute." *See infra* ¶ 36. While that may be true given the facts in this case, we find it worthwhile to reiterate some of the points made in *Rushton* for why the totality-of-the-circumstances test is necessary. First, the Single Criminal Episode statute leaves the term "criminal objective" undefined. While we agree with Justice Lee that the term "criminal objective" is "not a reference to a 'hazy nefarious purpose' of wrongdoing," *infra* ¶ 38, we do not believe we can reach this conclusion without an appeal to the totality of the circumstances. Indeed, the decades of jurisprudence from our courts on this issue makes clear that a factual appeal to the totality of the circumstances is necessary in order to determine the confines of conduct that is incident to a single criminal objective. *See e.g., Rushton*, 2017 UT 21, ¶ 35; *State v. Ireland*, 570 P.2d 1206, 1207 (Utah 1997); *State v. Germonto*, 868 P.2d 50, 60 (Utah 1993); *State v. Cornish*, 571 P.2d 577, 578 (Utah 1977).

Moreover, Justice Lee's proposed test would, in many instances, broaden the reach of the Single Criminal Episode Statute impermissibly. For example, suppose Sisneros had recklessly run over and killed an innocent bystander in his attempt to get away with the stolen car. Under Justice Lee's proposed test, this conduct would arguably be incident to the single criminal objective of theft by receiving, and the State would be barred from prosecuting Sisneros for vehicular manslaughter in a separate trial. Under the totality-of-the-circumstances test, however, the State would not be so constrained because (1) vehicular manslaughter is fundamentally different in nature than theft by receiving, (2) the victims of this crime would be separate under any definition, and (3) there likely would have been sufficient time for Sisneros to consciously make the decision to avoid running over the innocent bystander. Indeed, this fact pattern is roughly similar to the facts of *State v. Ireland* where we implicitly relied on a totality-of-the-circumstances analysis in order to find that aggravated kidnapping was not part of the same criminal objective as aggravated robbery

(continued . . .)

## II. BOTH OFFENSES WERE WITHIN THE JURISDICTION OF A SINGLE COURT

¶23 After finding that the theft by receiving and aggravated robbery offenses both arose under a single criminal episode, we now turn to whether the "offenses [were] within the jurisdiction of a single court." *See* UTAH CODE § 76-1-402(2)(a). The State argues that this requirement of the Single Criminal Episode Statute was not met because the aggravated robbery charge was not within the jurisdiction of the district court in Utah County—where Sisneros was first charged. However, the district courts in Weber County had jurisdiction to hear both offenses, and the State could have chosen to prosecute Sisneros in Weber County from the beginning. As such, under the plain language of the Single Criminal Episode Statute, we conclude that both offenses were "within the jurisdiction of a single court." *Id.*

¶24 When tasked with questions of statutory interpretation, "we first look to the plain language of the statute and give effect to that language unless it is ambiguous." *State v. Jeffries*, 2009 UT 57, ¶ 7, 217 P.3d 265 (citation omitted). "Thus, a statutory provision should be read literally, unless it would result in an unreasonable or inoperable result." *Id.* Utah Code section 76-1-403 bars the State from subjecting a defendant to "a subsequent prosecution for . . . a different offense arising out of the same criminal episode" when "the subsequent prosecution is for an offense that was or should have been tried under Subsection 76-1-402(2) in the former prosecution." UTAH CODE § 76-1-403(1). Utah Code section 76-1-402(2), in turn, provides that "[w]henever conduct may establish separate offenses under a single criminal episode . . ., a defendant shall not be subject to separate trials for multiple offenses when . . . [t]he offenses are within the jurisdiction of a single court."

¶25 Under the plain language of these statutory provisions, both the theft by receiving and the aggravated robbery offenses were "within the jurisdiction of a single court" because both offenses could have been heard by the district courts in Weber County. All district courts in Utah have original jurisdiction to hear criminal matters. *See* UTAH CODE § 78A-5-102(2). Moreover,

---

even though the kidnapping was incident to, and arguably necessary for, the successful aggravated robbery. *See Ireland*, 570 P.2d at 1207.

the district courts in Weber County had venue to hear both charges against Sisneros because Sisneros allegedly committed both offenses in Weber County.[7] *See id.* § 76-1-202(1). Accordingly, if the State wished to prosecute Sisneros for both offenses, the State should have conducted the prosecution in Weber County. Because the State did not do so, the State was barred from conducting a subsequent prosecution against Sisneros for aggravated robbery when Sisneros had already been convicted of theft by receiving under the same criminal episode. *See id.* § 76-1-403(1).

¶26 The State contends that the charges against Sisneros could not have been brought in a single court because Sisneros was first prosecuted in Utah County where he had only committed the theft by receiving offense. The State cites our opinion in *State v. Sosa*, 598 P.2d 342 (Utah 1979), to argue that the Single Criminal Episode Statute is "strictly procedural in nature" and requires only that "when a defendant is brought before a court, all offenses arising from a single incident which are triable before *that court* be charged at the same time." *Id.* at 345 (emphasis added). Here, the Utah County prosecutors charged Sisneros with all offenses that could have been tried before the district court in Utah County, as that court did not enjoy venue to hear the aggravated robbery offense.

¶27 Nevertheless, the State's interpretation of our holding in *Sosa* is incorrect. In *Sosa*, we held that the Single Criminal Episode Statute did not bar the separate prosecutions of a defendant

---

[7] Sisneros argues that considerations of venue are not appropriate when determining whether offenses are "within the jurisdiction of a single court" for purposes of the Single Criminal Episode Statute. According to Sisneros, the word "jurisdiction" is not ambiguous, and it means only the constitutional and statutory limits of the authority of the court in question. Under this interpretation of the Single Criminal Episode Statute, the offenses for which Sisneros was charged would have been "within the jurisdiction" of the district courts in both Utah County and Weber County. Nevertheless, because we find that it was sufficient for just the district courts in Weber County to have jurisdiction over the offenses to bar the subsequent prosecution of Sisneros, we do not need to consider whether venue is a necessary requirement under the Single Criminal Episode Statute.

charged with misdemeanor and felony offenses because, under the law in effect at the time, the misdemeanor offenses had to be separated from the felony offense and brought in the justice courts.[8] *See id.* at 344–45; *see also State v. Johnson*, 114 P.2d 1034, 1042 (Utah 1941) ("While the District Court has general jurisdiction in all criminal matters, the proper procedure in misdemeanor cases as prescribed by statute is to commence the action in the city or justice's court."). Because the State *could not* have prosecuted all offenses in a single court, we held that the State was not required to abandon prosecution of one or more offenses in favor of prosecuting another offense that arose out of the same criminal episode. *See Sosa*, 598 P.2d at 345. This holding has no bearing on the case before us. Here, the offenses in question were not required to be commenced in separate courts. As such, the State *could* have brought both charges against Sisneros in a single prosecution.

¶28 Moreover, the language in *Sosa* stating that "[t]he single criminal episode statute is strictly procedural in nature" is strictly dicta and, with respect to the current version of the statutes in play, is incorrect. The legislature does not have the constitutional power to "adopt rules of procedure." *Brown v. Cox*, 2017 UT 3, ¶ 17, 387 P.3d 1040; *see* UTAH CONST. art. VIII, § 4. Instead, article VIII, section 4 of the Utah Constitution grants this power to the Utah Supreme Court. We presume that legislation is "constitutional, and we resolve any reasonable doubts in favor of constitutionality." *State v. Drej*, 2010 UT 35, ¶ 9, 233 P.3d 476 (citation omitted). And here, there is no doubt that the Single Criminal Episode Statute is not merely a procedural statute that defines the "mode or form of procedure for enforcing substantive rights," *see id.* ¶ 27 (citation omitted) (internal quotation marks

---

[8] At the time *Sosa* was decided, Utah Code section 78-5-4 (repealed 1977) granted justice courts jurisdiction over "[a]ll class B and class C misdemeanors punishable by a fine less than $300 or by imprisonment in the county jail or municipal[] prison not exceeding six months." *Sosa*, 598 P.2d at 344. The Utah Legislature has since amended the code to grant district courts "original jurisdiction" over class B and class C misdemeanors in cases where the offenses are "included in an indictment or information covering a single criminal episode alleging the commission of a felony or a class A misdemeanor . . . ." *See* UTAH CODE §§ 78A-5-102(9); 78A-7-106(1).

omitted), but a substantive statute that grants defendants a substantive right not to be subject to multiple prosecutions for crimes arising under a single criminal episode when the specified provisions are met. In *Sosa*, the provisions of the statute were not met because no single court had jurisdiction to hear all of the offenses that arose under the single criminal episode. Here, however, no party disputes that the district court in Weber County had jurisdiction to hear both offenses for which Sisneros was charged.

¶29 Finally, the State argues that it should not have been required to join the prosecution of Sisneros in Weber County because this "unduly intrudes on county and district attorney's prosecutorial decisions" since "[e]ach county has a vested interest in prosecuting the crimes that occur within its jurisdiction." Notwithstanding this "vested interest," when a county prosecutor chooses to prosecute a defendant for crimes under the Utah Criminal Code, that prosecutor acts "on behalf of the state." *See* UTAH CODE § 17-18a-401(1). And as such, the actions of the county prosecutor are as binding on the State as they are on the defendant being prosecuted. In passing the Single Criminal Episode Statute, the Utah Legislature chose to limit the prosecutorial decisions of individual counties to "protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode" and "to ensure finality without unduly burdening the judicial process by repetitious litigation." *See State v. Rushton*, 2017 UT 21, ¶ 35, 395 P.3d 92 (citation omitted). The language and meaning of the Single Criminal Episode Statute are clear, and we will not take the exceptional step of reading additional limitations into the statute in order to safeguard the preferences of individual counties and district attorneys.

## CONCLUSION

¶30 We find that Sisneros's theft by receiving and aggravated robbery offenses both arose under a single criminal episode and that both offenses were within the jurisdiction of a single court. Because Sisneros was convicted of theft by receiving in Utah County, and the State does not dispute that the prosecuting attorney in Utah County was aware of both offenses at the time Sisneros was arraigned on the first information or indictment, all provisions under Utah's Single Criminal Episode Statute have been met. Accordingly, we affirm the court of appeals' dismissal of the subsequent charge against Sisneros for aggravated robbery in Weber County.

ASSOCIATE CHIEF JUSTICE LEE, concurring in part and concurring in the judgment:

¶31 I concur in the court's conclusion that the aggravated robbery charge against Landon Sisneros is barred under Utah Code section 76-1-402(2). I also concur in the majority opinion on one element of the statutory analysis—the determination that the theft by receiving and aggravated robbery charges were offenses "'within the jurisdiction of a single court' because both offenses could have been heard by the district courts in Weber County." *Supra* ¶ 25. I write separately, however, because I disagree with the majority opinion's analysis of the other element of the statutory inquiry—the conclusion that these offenses were incident to an attempt or accomplishment of the "criminal objective of stealing [a] car" under a multi-factor "totality of the circumstances" test. *See supra* ¶¶ 16–17, 22.

¶32 The majority applies a standard first established in *State v. Rushton*, 2017 UT 21, 395 P.3d 92—a multi-factor balancing framework imported from *United States v. Letterlough*, 63 F.3d 332 (4th Cir. 1995). *See Rushton*, 2017 UT 21, ¶¶ 12, 36–39 (citing *Letterlough*, 63 F.3d at 335). But the *Rushton* standard is riddled with vagueness and imprecision. The factors themselves call for discretionary judgment calls on a series of ill-defined gray scales—on the degree or extent of (1) distance between the "geographic locations" in which the offenses arose, (2) difference in the substantive "nature" of the offenses, (3) difference in the identity of "victims" of the offenses, and (4) time or opportunity to make a conscious decision to commit the later of the two offenses. *See Rushton*, 2017 UT 21, ¶¶ 36–39. The standard is further obscured by the lack of any rubric defining the interplay among the factors, as by an indication of the factors' relative weight. And the problem is highlighted by the lack of any connection between the *Rushton* factors and the operative language of the governing statute.

¶33 These and other points of imprecision are lurking beneath the surface in this case. A key question presented goes to the definition of the "victims" of a crime under the third *Rushton* factor. Another is whether any difference in the identity of the victims is enough to outweigh other factors cutting in the other direction. But the court stops short of resolving these questions. *See supra* ¶¶ 20–21 (concluding that any "disagreement" on the meaning of "victim" is not "material" to its decision); *id*. ¶ 21 (stating only that a difference in identity of victims "can sometimes" establish that there is no single criminal objective). Instead of clarifying the test on these and other points, the majority simply asserts that "the totality of the circumstances indicates that

both offenses were 'incident to an attempt or an accomplishment of a single criminal objective'" — to "steal[] a car." *Supra* ¶ 22.

¶34 This holding perpetuates the indeterminacy of our law in a field in which "predictability is at a premium." *Rushton*, 2017 UT 21, ¶ 71 (Lee, A.C.J., joined by Durrant, C.J., concurring in the judgment). Both prosecutors and defendants need to be able to anticipate the preclusive effect of a criminal prosecution. And *Rushton* makes it difficult if not impossible for them to do so.

¶35 The *Rushton* standard would be defensible nonetheless if it were rooted in the governing language of the statute. But the *Rushton* framework bears no connection to the statutory text. *See id.* ¶ 53 (making this point). It is based on a standard under a federal statute that "bears little resemblance to the operative Utah provisions." *Id.* And that is a further barrier to the viability of the *Rushton* framework.

¶36 I raised these and other concerns in my separate opinion in *Rushton*. And I remain convinced of the position I developed there. We should resolve the "single criminal episode" question on the basis of the controlling text of the statute — not under a case-by-case balancing of factors under a "totality of the circumstances." *See id.* ¶ 47–48.

¶37 By statute, a "'single criminal episode' means all conduct which is closely related in time and is incident to an *attempt* or an *accomplishment* of a single *criminal objective*." UTAH CODE § 76-1-401 (emphasis added). The italicized terms are critical. They tell us that a criminal offense is statutorily precluded if it arises out of conduct that furthers "the attempt or accomplishment of" another crime arising out of the same conduct. *Rushton*, 2017 UT 21, ¶ 59 (Lee, A.C.J., joined by Durrant, C.J., concurring in the judgment).

¶38 The starting point is the identification of the relevant "criminal objective." This is not a reference to a "hazy nefarious purpose" of wrongdoing. *Id.* It is a reference to an "objective" to commit a specific crime as defined in our law. *See id.* ¶ 52 (explaining that "'single criminal objective' cannot be defined in the abstract," to encompass any broad, nefarious purpose, as that "would eviscerate the permissive joinder statute, Utah Code section 77-8a-1(1)"); *id.* ¶ 16 (majority reaching the same conclusion).

¶39 The second step is the identification of the relationship between the two crimes at issue. Each crime must be based on conduct that is "closely related in time." And one of the crimes

must be "incident to an attempt or an accomplishment" of another crime.

¶40 "The words 'attempt' and 'accomplishment' have well-defined meanings in the criminal law." *Id.* ¶ 58. And the statutory text carries forward those meanings—in a standard that requires joinder of any criminal offense that is "incident to" an "attempt" to commit another crime or to the "accomplishment" of such crime. *Id.*

¶41 That standard is easily established here. The conduct giving rise to the charge of aggravated robbery furthered the "accomplishment" of the "criminal objective" of the crime of theft by retention of property. This is clear from the fact that both crimes have as their subject the exact same piece of personal property—the car that was stolen by Sisneros.

¶42 I would resolve the "single criminal episode" inquiry on this basis. And I would thereby avoid extending the imprecision and indeterminacy introduced into our law in *Rushton*.

———————————

CHIEF JUSTICE DURRANT, concurring:

¶43 I concur fully in the majority opinion. It properly applies the *Rushton* factors to the case at hand and correctly determines that the theft by receiving and aggravated robbery offenses were part of a single criminal episode. I also agree with the majority's conclusions that both offenses were "within the jurisdiction of a single court" for purposes of the Single Criminal Episode Statute.

¶44 I write separately to note that while I agree substantively with the view Associate Chief Justice Lee has so ably articulated both in this case and in *Rushton*, I have decided to join the majority because *Rushton* now controls. Once a case has been decided, we should accord it precedential weight and "give [it] a full and fair application to the facts before us," regardless of (and often despite) our personal views on whether the case was correctly decided.[9] This principle is particularly applicable in situations—such as this one—where neither party has asked us to overrule the controlling

———————————

[9] *Neese v. Utah Bd. of Pardons & Parole*, 2017 UT 89, ¶ 59, 416 P.3d 663.

precedent[10] and where application of the competing tests yields the same result.[11] For these reasons and under principles of *stare decisis*, I am disinclined to revisit *Rushton*. So I join the majority.

––––––––––––

[10] *Id.* ¶ 51 ("Appellate courts have no business unsettling the law by overturning significant precedent where the parties have not asked the court to do so, nor been provided with an opportunity to brief the issue, nor . . . carried their burden of persuasion to show us that the precedent should be overturned."); *see also State v. Walker*, 2011 UT 53, ¶ 21, 267 P.3d 210 (Nehring, J., concurring) ("Like all of my colleagues, I disagree with many judicial opinions. I have even come to take issue with opinions I have authored for the court. But I also believe that giving voice to those opinions should be reserved for an occasion where the issues presented are properly before the court.").

[11] *See infra* ¶ 31 (Lee, A.C.J., concurring in the judgment) (determining, under an alternate analysis, that "the aggravated robbery charge against Landon Sisneros is barred under" the Single Criminal Episode Statute).