2026 UT App 36

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSE BELTRAN-PEREZ,
Appellant.

Opinion
No. 20231121-CA
Filed March 19, 2026

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 191908322

Erick Grange, Attorney for Appellant

Derek E. Brown and Joshua J. Prince,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1     The State charged Jose Beltran-Perez with robbery, stemming from events that occurred at a Maverik convenience store on January 7, 2018. Beltran-Perez moved to dismiss the charge, asserting that it violated statutory double jeopardy principles because he had already agreed, in an earlier *federal* case that had charged him with committing a different robbery, to pay restitution for the January 7 robbery. The district court denied the motion to dismiss. Beltran-Perez then pled guilty to the state robbery charge, but did so conditionally, preserving his right to appeal the denial of his motion to dismiss. Beltran-Perez now

challenges that decision, but for the reasons discussed herein, we reject Beltran-Perez's arguments and affirm his conviction.

BACKGROUND[1]

¶2 In January 2018, Beltran-Perez committed two robberies. First, on January 7, he entered a Maverik convenience store and told the cashier to "give [him] all the money in [the] register." The cashier complied, and Beltran-Perez took the money and left. In this opinion, we refer to this robbery as "the Maverik robbery."

¶3 Approximately three weeks later, on January 27, Beltran-Perez was involved in a second robbery. On this occasion, Beltran-Perez's friend contacted a man selling phones on Facebook and set up a meeting, to take place in a parking lot, to inspect and potentially purchase a phone. During the meeting, while the friend was talking to the seller, Beltran-Perez and another person arrived in a car and approached the seller. Armed with a machete, Beltran-Perez and the other person took the seller's wallet, keys, and cellphone and then fled the scene, with one of them driving away in the seller's vehicle. We refer to this second robbery as "the Facebook robbery."

¶4 A few days later, the United States charged Beltran-Perez in federal court with carjacking and robbery. All the events described in the federal charging document were connected to the Facebook robbery; indeed, that charging document made no

---

1. Because Beltran-Perez entered into plea agreements with the State and the United States, there was no trial or resulting transcript. The facts recited here come from the charging documents, the plea agreement forms, the motion to dismiss hearing transcript, and the court's findings from that hearing. *See, e.g.*, *State v. Hintze*, 2025 UT 3, n.1, 567 P.3d 506; *State v. Mooers*, 2018 UT App 74, ¶ 2 n.2, 424 P.3d 1126.

mention of the Maverik robbery. However, as the federal case proceeded, federal prosecutors provided Beltran-Perez with discovery materials that concerned not only the Facebook robbery but also the Maverik robbery, including a security camera video recording of the Maverik robbery.

¶5    Eventually, federal prosecutors and Beltran-Perez reached a plea agreement. Beltran-Perez agreed to plead guilty to the federal robbery charge and, as the factual basis for the plea, Beltran-Perez admitted that on January 27 he had gone to the parking lot and robbed the phone seller. Beltran-Perez also agreed to pay restitution "arising out of" not only the Facebook robbery but also the Maverik robbery. In exchange, federal prosecutors agreed to drop the carjacking charge, and they also agreed to "not seek an indictment against" Beltran-Perez in connection with the Maverik robbery. The federal government upheld its end of that bargain, and it never formally charged Beltran-Perez—whether through indictment or other means—with any criminal activity related to the Maverik robbery.

¶6    About a year later, the State—which was not a party to, and therefore not contractually bound by, the federal court plea agreement—charged Beltran-Perez with robbery. In the charging document, the State alleged that on January 7, 2018, Beltran-Perez had robbed "a business" by asking the cashier to hand over "all the money in [the] register." All parties agree that the state case concerns the Maverik robbery.

¶7    Beltran-Perez moved to dismiss the charge, arguing that the prosecution violated the provisions of Utah's double jeopardy statute. Under that statute, a "prosecution in [another] jurisdiction," whether "federal or state," acts as "a bar to a subsequent prosecution in this state if," as relevant here, "the former prosecution resulted in an acquittal, conviction, or termination of prosecution, as those terms are defined in Section 76-1-403." Utah Code § 76-1-404. Among other things, Beltran-

Perez asserted that, because federal prosecutors as part of the earlier plea agreement had agreed not to "seek an indictment against" him for the Maverik robbery, the earlier federal prosecution had resulted in a "termination of prosecution" regarding the Maverik robbery.

¶8     After hearing oral argument on the matter, the district court denied the motion to dismiss, concluding that Beltran-Perez "was never federally indicted for" the Maverik robbery and that, therefore, "there was no formal federal prosecution of that offense." Moreover, the court determined that the federal prosecutors' agreement "to not prosecute" Beltran-Perez for the Maverik robbery did "not establish that there ha[d] been a termination of prosecution under" Utah law. Accordingly, the court determined that Beltran-Perez's case did not qualify for dismissal under Utah's double jeopardy statute.

¶9     Later, Beltran-Perez pled guilty to the state robbery charge, but in so doing he reserved his right to appeal the denial of his motion to dismiss.

ISSUE AND STANDARD OF REVIEW

¶10     Beltran-Perez now appeals, and he exercises his reserved right to challenge the district court's order denying his motion to dismiss. Because this appeal concerns the interpretation of a statute, our review here is for correctness. *See State v. Robertson*, 2017 UT 27, ¶ 14, 438 P.3d 491 ("The proper interpretation and application of a statute is a question of law reviewed for correctness." (cleaned up)).

ANALYSIS

¶11    "The double jeopardy clauses of both the Utah and federal constitutions limit the government's ability to prosecute or punish an individual multiple times for the same conduct." *Id.* ¶ 15; *see also* U.S. Const. amend. V (stating that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"); Utah Const. art. I, § 12 (stating that no person shall "be twice put in jeopardy for the same offense"). But these constitutional double jeopardy principles have certain limitations. For instance, constitutional double jeopardy protections do not apply early in criminal cases, but instead "attach only when an accused is put on trial and a jury has been sworn and impaneled." *See State v. Cheek*, 2015 UT App 243, ¶ 59, 361 P.3d 679 (cleaned up). Additionally, constitutional double jeopardy principles include the so-called dual sovereignty doctrine, which permits successive "prosecutions by separate sovereigns." *State v. Morris*, 2017 UT App 112, ¶ 16, 400 P.3d 1183; *see also Robertson*, 2017 UT 27, ¶ 2 (stating that the "dual sovereignty doctrine" is "a principle of double jeopardy law that permits subsequent prosecutions by different sovereigns, even for the same offense" (cleaned up)).

¶12    Utah, by statute, provides criminal defendants with double jeopardy protections that are, in at least one respect, broader than those provided by constitutional doctrine. *See State v. Sisneros*, 2022 UT 7, ¶ 1, 506 P.3d 564 (stating that "Utah extends [double jeopardy] protection even further" than the United States Constitution does). In particular, and as relevant here, Utah statutory law rejects the dual sovereignty doctrine. *See Robertson*, 2017 UT 27, ¶ 33 (noting that Utah's statute manifests a "legislative rejection of" the dual sovereignty doctrine). The governing statute reads as follows:

> If a defendant's conduct establishes the commission of one or more offenses within the concurrent jurisdiction of this state and of another jurisdiction,

> federal or state, the prosecution in the other jurisdiction is a bar to a subsequent prosecution in this state if:
>
> (1) the former prosecution resulted in an acquittal, conviction, or termination of prosecution, as those terms are defined in Section 76-1-403; and
>
> (2) the subsequent prosecution is for the same offense or offenses.

Utah Code § 76-1-404. Here, Beltran-Perez invokes this statute, and he asserts that the State's prosecution of him for the Maverik robbery violates the terms of this statute.[2]

¶13    All parties agree that the second statutory element is met because the "subsequent prosecution"—the State's prosecution in this case—was "for the same offense or offenses" that were at issue in the federal case. *See id.* § 76-1-404(2). As the State puts it in its brief, "all agree that the Maverik robbery for which Beltran-Perez agreed to pay restitution as part of his federal plea agreement and the Maverik robbery to which he pleaded guilty in state court is the 'same offense.'"

¶14    But the State resists Beltran-Perez's assertion that the first statutory element is met. On this point, the State makes two arguments. First, it asserts that no federal prosecution was ever commenced because no federal indictment was ever issued regarding the Maverik robbery. Second, it asserts that even if a federal prosecution was somehow commenced, that prosecution did not "result[] in an acquittal, conviction, or termination of

---

2. Beltran-Perez's claims in this appeal are entirely statutory; that is, he does not assert that any constitutional double jeopardy principles were violated by the State's prosecution of him for the Maverik robbery.

prosecution," as those terms are used in Utah's statute. We find the State's second point persuasive and dispositive of this appeal: even if we assume, for purposes of the discussion, that a federal prosecution regarding the Maverik robbery commenced, that prosecution did not result in an acquittal, conviction, or termination of prosecution.

¶15    To be clear, Beltran-Perez does not assert that any federal prosecution regarding the Maverik robbery resulted in an acquittal or conviction. Instead, he asserts that there was a federal prosecution that, through the plea bargain process, resulted in a "termination of prosecution." The relevant statute instructs us to apply the definition of "termination of prosecution" that is provided "in Section 76-1-403" of the Utah Code (Section 403). *Id.* § 76-1-404(1). When we examine the way that term is used and discussed in Section 403, we find no support for Beltran-Perez's argument that there was a "termination of prosecution" in federal court regarding the Maverik robbery.

¶16    While Section 403 provides relatively straightforward definitions of "acquittal" and "conviction," *see id.* § 76-1-403(2), (3), its definition of "termination of prosecution" is somewhat less precise. In discussing that term, Section 403 indicates that double jeopardy protections apply in either of two situations:

- when "the former prosecution . . . was improperly terminated," *id.* § 76-1-403(1)(b)(iii), a term for which further clarification is offered in subsection (4), *see id.* § 76-1-403(4); or

- when "the former prosecution . . . was terminated by a final order or judgment for the defendant that has not been reversed, set aside, or vacated and that necessarily required a determination inconsistent with a

> fact that must be established to secure conviction in the subsequent prosecution," *id.* § 76-1-403(1)(b)(iv).

Thus, by invoking Section 403's discussion of the term "termination of prosecution," the relevant statute indicates that, to trigger double jeopardy protections, a "termination of prosecution" must fall within one of the two specific definitional categories included in Section 403. *See id.* § 76-1-404(1). We must therefore examine each of the two statutory categories to see whether either one applies here.

¶17 We can quickly dispense with the second option. The federal case was simply never terminated by a final order or judgment in favor of Beltran-Perez that "necessarily required a determination inconsistent with a fact that must be established to secure conviction in the subsequent prosecution." *See id.* Indeed, Beltran-Perez does not argue to the contrary.

¶18 So that leaves the first option: that the federal case "was improperly terminated." *Id.* § 76-1-403(1)(b)(iii). And here, the additional clarification provided in subsection (4) of Section 403 makes clear that this category doesn't apply either. That subsection provides the definitional requirements of "improper termination," as follows:

> There is an improper termination of prosecution if the termination takes place before the verdict, is for reasons not amounting to an acquittal, *and takes place after a jury has been impaneled and sworn to try the defendant, or, if the jury trial is waived, after the first witness is sworn*.

*Id.* § 76-1-403(4) (emphasis added). But some exceptions apply. For instance, "termination of prosecution is not improper," even

if the basic definitional requirements are met, if "the defendant consents to the termination." *Id.* § 76-1-403(4)(a).

¶19   It is evident that the basic definitional requirements of "improper termination of prosecution" are not met here. While the termination certainly took place before any verdict and was for reasons not amounting to an acquittal, it did not take place "after a jury ha[d] been impaneled and sworn . . . or, if the jury trial [had been] waived, after the first witness [had been] sworn."[3] *Id.* § 76-1-403(4). Indeed, our supreme court, interpreting this same statute, has indicated that "Utah's statutory double jeopardy protection . . . does not attach at pretrial proceedings." *State v. Cahoon*, 2009 UT 9, ¶ 16, 203 P.3d 957. The federal case against Beltran-Perez regarding the Maverik robbery, such as it was, concluded with a plea agreement reached prior to the start of any trial. No jury was impaneled, and no witness was sworn. Thus, there was no "improper termination of prosecution," as that term is used in Utah's double jeopardy statute.

¶20   Beltran-Perez resists this conclusion by pointing out that, by signing on to the plea agreement, he consented to the termination of the federal prosecution, and by directing our

---

3. This conclusion is not only compelled by the text of the relevant statutory provisions, read together in harmony, *see Vineyard Props. of Utah LLC v. RLS Constr. LLC*, 2021 UT App 144, ¶ 26, 505 P.3d 65 ("We consider the relevant statute in its entirety, construing each part or section in connection with every other part or section so as to produce a harmonious whole." (cleaned up)), but it also aligns neatly with constitutional double jeopardy principles, which (as noted) kick in only late in a criminal case's prosecution, "when an accused is put on trial . . . and a jury has been sworn and impaneled," *see State v. Cheek*, 2015 UT App 243, ¶ 59, 361 P.3d 679 (cleaned up); *see also State v. Cahoon*, 2009 UT 9, ¶ 15, 203 P.3d 957 (noting that constitutional double jeopardy protections "do[] not attach until a trial begins").

attention to the statutory language stating that "termination of prosecution is not improper if . . . the defendant consents to the termination." *See* Utah Code § 76-1-403(4)(a). It is certainly true that Beltran-Perez consented to the termination of any federal prosecution for the Maverik robbery. But this fact is irrelevant here, where the basic definitional prerequisites of "improper termination of prosecution" are not met. Whether Beltran-Perez consented to the termination of the prosecution is a factor relevant to one of the statutory *exceptions* to "improper termination of prosecution," and that factor becomes relevant only if the underlying prerequisites are first met. *See id.* Because those prerequisites are not met, there was no improper termination of prosecution, even though Beltran-Perez consented to termination.

¶21    Thus, neither of the two situations that constitute a "termination of prosecution"—as that term is defined in Utah's double jeopardy statute—is present on the facts of this case. As a result, the federal prosecution did not result "in an acquittal, conviction, or termination of prosecution," and therefore the first element of Utah's statute is not satisfied here. On this basis, we reject Beltran-Perez's assertion that, with regard to the Maverik robbery, the double jeopardy protections of Utah's statute were triggered by the events that occurred in the federal case.


CONCLUSION

¶22    For the foregoing reasons, Beltran-Perez's statutory right to be free from double jeopardy was not violated by the State's prosecution of him for his involvement in the Maverik robbery. Accordingly, the district court did not err when it denied Beltran-Perez's motion to dismiss. We therefore reject his appellate arguments and affirm his conviction.

————————