**2022 UT App 136**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TAMER AHMED HEBEISHY AND JARON MICHAEL SADLER,
Appellants.

Opinion
No. 20200230-CA
Filed December 8, 2022

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 161900107

Randall W. Richards, Attorney for Appellant
Tamer Ahmed Hebeishy

Laura J. Fuller, Attorney for Appellant
Jaron Michael Sadler

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellee

JUSTICE JILL M. POHLMAN authored this Opinion, in which JUDGE
GREGORY K. ORME and JUSTICE DIANA HAGEN concurred.[1]

POHLMAN, Justice:

¶1     Tamer Ahmed Hebeishy and Jaron Michael Sadler entered
conditional guilty pleas to various charges arising out of their
participation in an organized criminal street gang. As part of their

---

1. Justices Jill M. Pohlman and Diana Hagen began their work on
this case as members of the Utah Court of Appeals. They both
became members of the Utah Supreme Court thereafter and
completed their work on this case sitting by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 3-108(4).

plea agreements, both defendants reserved the right to appeal the district court's rulings.

¶2    Now, in this consolidated appeal, Hebeishy and Sadler (collectively, Defendants) appeal the district court's denial of a motion to suppress evidence obtained pursuant to a wiretap order allowing for the interception of communications on Hebeishy's mobile phone. Defendants contend that the motion to suppress should have been granted either because (1) the wiretap application failed to meet the necessity requirement of section 77-23a-10(1)(c) of Utah's Interception of Communications Act or (2) the law enforcement affidavit supporting the wiretap application was misleading due to false statements and material omissions.

¶3    Hebeishy also individually appeals the denial of his motion to dismiss two of the four predicate offenses that supported his conviction for pattern of unlawful activity. He contends that the relevant statute of limitations, the state or federal double jeopardy clause, or Utah's single criminal episode statute barred the State's reliance on the two offenses.

¶4    We affirm.


BACKGROUND

¶5    This is a companion case to and arises out of many of the same facts involved in *State v. Sadat Hebeishy*, 2022 UT App 134, and *State v. Pickett*, 2022 UT App 135, both of which also issue today. In short,[2] Hebeishy and Sadler were identified by law enforcement as members of the Titanic Crip Society (TCS), a criminal street gang in Weber County, Utah. As part of its investigation of TCS, law enforcement received authorization from the district court to conduct a wiretap of Hebeishy's mobile

---

2. A more fulsome description of the relevant facts and procedural history can be found in *State v. Sadat Hebeishy*, 2022 UT App 134.

phone. Based in part on evidence obtained from that wiretap, the State charged Hebeishy with aiding and abetting graffiti, pattern of unlawful activity, aggravated assault, obstructing justice, and aiding or concealing a youth offender—all but one with gang enhancements. Also based on that and other evidence, the State charged Sadler with pattern of unlawful activity, aggravated robbery, two counts of aggravated assault, vehicle burglary, and assault—all with gang enhancements.

¶6     Before trial, Hebeishy filed a motion to suppress evidence obtained from the wiretap, which Sadler joined, arguing that the application seeking the wiretap order failed to meet the necessity requirement of section 77-23a-10(1)(c) of Utah's Interception of Communications Act and that the law enforcement officer's (Officer) supporting affidavit was misleading due to false statements and material omissions. After briefing and argument, the district court denied the motion, determining that (1) the wiretap application satisfied the statutory necessity requirement; (2) the supporting affidavit "was not inaccurate, false, or misleading;" and (3) even assuming the affidavit was misleading, there had been no showing that Officer acted intentionally, knowingly, or recklessly in making his assertions.

¶7     Hebeishy then filed a motion to dismiss two of the four predicate offenses on which the pattern of unlawful activity charge was based—predicate offense nine for aggravated assault and predicate offense fourteen for assault by a prisoner.[3] Hebeishy argued that the four-year statute of limitations had expired for both offenses before the pattern of unlawful activity charge was filed and thus neither one could be included as a predicate offense. Hebeishy alternatively argued that predicate offense nine had to be dismissed because its inclusion violated the prohibition against double jeopardy and Utah's single criminal episode statute. He reasoned that because he had previously been

---

3. The information alleged fourteen total predicate offenses among six defendants. Four of those offenses applied to Hebeishy.

convicted for riot based on the same conduct giving rise to the aggravated assault offense, the State could not lawfully rely on that predicate offense to prove pattern of unlawful activity.

¶8 The district court rejected these arguments. It concluded that the inclusion of predicate offenses nine and fourteen did not violate the applicable statute of limitations or the double jeopardy clause. Specifically, the court concluded that the State could base a pattern of unlawful activity charge "on charges or events where the Statute of Limitations would have expired." Further, citing Utah and federal authorities, the court expressly rejected Hebeishy's contention that the State's reliance on the aggravated assault as a predicate offense violated the double jeopardy clause.

¶9 Defendants later entered conditional guilty pleas. Hebeishy pleaded guilty to one count of pattern of unlawful activity, obstructing justice, and aiding or concealing a youth offender. Sadler pleaded guilty to one count of pattern of unlawful activity, attempted aggravated robbery, and aggravated assault. Both Defendants reserved their rights to appeal the district court's rulings, and they now appeal.

ISSUES AND STANDARDS OF REVIEW

¶10 Defendants first contend that the district court erred in denying their motion to suppress evidence obtained through the wiretap of Hebeishy's mobile phone. They argue that the district court incorrectly determined that law enforcement had satisfied the necessity requirement of Utah's Interception of Communications Act. They also argue that the court should have suppressed evidence obtained through the wiretap (or at least granted an evidentiary hearing) because the affidavit supporting the wiretap application was misleading due to false statements and material omissions.

¶11 Regarding Defendants' challenge to the district court's necessity determination, the parties disagree over what standard

of review applies.[4] Defendants advocate for a mixed standard of review, asserting that we should review the district court's factual findings for clear error and its necessity determination for correctness. The State, in contrast, invites us to review the necessity determination for an abuse of discretion, arguing that we should adopt the standard applied by most federal appeals courts in reviewing necessity determinations under the federal wiretap statute. *See United States v. Ramirez-Encarnacion*, 291 F.3d 1219, 1222 n.1 (10th Cir. 2002) (collecting cases). We need not resolve this dispute because, even reviewing the district court's necessity determination for correctness as urged by Defendants, we discern no error by the district court.

¶12 Regarding Defendants' challenge based on the alleged misleading nature of the wiretap affidavit, the parties agree that we review a district court's ruling on a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact. *See State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. Specifically, we review the court's factual findings for clear error, and we review its legal conclusions, including its application of law to the facts of the case, for correctness.[5] *See id.*; *see also State v. Tripp*, 2010 UT 9, ¶ 23, 227 P.3d 1251.

---

4. Utah appellate courts have yet to address the necessity requirement in Utah's Interception of Communications Act and thus have had no occasion to articulate the appropriate standard of review.

5. The parties do not separately address what standard of review applies to our review of the district court's denial of an evidentiary hearing. Thus, it appears they both contend that we should apply the mixed standard of review generally applicable to rulings on motions to suppress. This approach is consistent with precedent from this court. *See State v. Sanchez*, 2020 UT App 158, ¶ 14, 477 P.3d 501.

¶13    Second, Hebeishy separately contends that the district court erred in denying his motion to dismiss two of the predicate offenses on which the pattern of unlawful activity charge was based, asserting that the State cannot rely on the offenses because they are barred by the applicable statute of limitations, the double jeopardy clause, and Utah's single criminal episode statute. A district court's denial of a motion to dismiss presents a question of law, which we review for correctness. *State v. Rushton*, 2017 UT 21, ¶ 9, 395 P.3d 92.

## ANALYSIS

### I. Motion to Suppress

A.    The Necessity Determination

¶14    Before entering their guilty pleas, Defendants sought to suppress the evidence obtained through the court-authorized wiretap of Hebeishy's mobile phone. Defendants argued, among other things, that in seeking the wiretap order, law enforcement failed to satisfy the necessity requirement of Utah's Interception of Communications Act (the Act).[6] *See* Utah Code Ann. § 77-23a-10(1)(c) (LexisNexis 2017) (requiring that an application for a wiretap order include "a full and complete statement as to whether other investigative procedures have been tried and failed or why they reasonably appear to be either unlikely to succeed if tried or too dangerous").[7]

---

6. Because there have been no substantive changes to the relevant statutory provisions, we cite the current version of the Utah Code for the reader's convenience.

7. The Act allows any "aggrieved person in any trial, hearing, or proceeding in or before any court" to move to suppress an unlawfully intercepted communication. *See* Utah Code Ann. § 77-

(continued…)

¶15     The same necessity argument was made by co-defendants Sadat Hebeishy and Brock Pickett in support of their motions to suppress, and the district court resolved the co-defendants' respective motions to suppress together. And although Defendants' appeals of the court's denial of their motions to suppress based on an alleged absence of necessity have not been consolidated with the appeals of their co-defendants, Defendants present materially indistinguishable arguments on this point.[8] For the reasons set forth in companion case *State v. Sadat Hebeishy*, 2022 UT App 134, ¶¶ 15–33, we reject Defendants' challenge to the district court's determination that necessity for the wiretap order was shown and its denial of their motion to suppress on that basis.

B.      Defendants' Claims of False Statements and Material Omissions

¶16     In addition to challenging the district court's necessity determination, Defendants also argue that the court erred in rejecting their contention that the affidavit supporting law enforcement's application for a wiretap order contained false statements and material omissions. Defendants assert that because the affidavit "contains serious flaws that call into question the validity of the information" on which the court based

---

23a-10(11)(a) (LexisNexis 2017). An "aggrieved person" is defined in the Act as "a person who was a party to any intercepted wire, electronic, or oral communication, or a person against whom the interception was directed." *Id.* § 77-23a-3(1). The State does not contest Sadler's standing to challenge the wiretaps on Hebeishy's mobile phone. Thus, we assume that Sadler is an "aggrieved person" under the Act for purpose of the wiretap.

8. Defendants appear to challenge the necessity determination relative to only the wiretap order on Tamer Hebeishy's mobile phone, and they do not appear to challenge the necessity determination relative to the wiretap order on Sadat Hebeishy's mobile phone.

its probable cause and necessity determinations, the district court should have granted their request for a *Franks* hearing or otherwise suppressed the evidence obtained through the wiretap. To put this argument in context, we describe the relevant standards and the basis for the district court's denial of Defendants' motion. We then address Defendants' challenge on appeal.

1

¶17   The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

¶18   In considering whether to authorize a search warrant, a magistrate "must rely on the representations of the investigating officer, who sets forth in the warrant affidavit the facts the officer contends are sufficient to meet the probable cause standard." *State v. Gonzalez*, 2021 UT App 83, ¶ 22, 494 P.3d 1066; *see also Franks v. Delaware*, 438 U.S. 154, 164–65 (1978). Although not every recited fact need be correct, the United States Supreme Court in *Franks v. Delaware* explained that the assertions must be "truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." 438 U.S. at 165 (cleaned up).

¶19   If a defendant believes that the investigating officer's assertions in support of the search warrant were untruthful, the defendant may challenge the warrant and seek an evidentiary hearing—a *Franks* hearing—to prove that claim. *See id.* at 171–72; *see also Gonzalez*, 2021 UT App 83, ¶ 23. But there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must

be accompanied by an offer of proof." *Id.* Further, to warrant a *Franks* hearing, a defendant must also demonstrate that "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 156. And if after a *Franks* hearing a defendant ultimately proves the same by a preponderance of the evidence, the "warrant must be voided" and resultant evidence suppressed. *Id.*; *see also State v. Fuller*, 2014 UT 29, ¶ 26, 332 P.3d 937.

¶20 By an extension of reasoning, Utah and federal courts have applied the *Franks* standard to alleged omissions of material facts. *See Gonzalez*, 2021 UT App 83, ¶ 23. To warrant a *Franks* hearing for an alleged omission, "a defendant must, by a detailed offer of proof," "make a substantial showing" that the investigating officer "intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading" and "demonstrate that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Id.* ¶ 24 (cleaned up).

¶21 Further, federal courts have allowed defendants to seek a *Franks* hearing for allegedly false statements or misleading omissions material to the necessity determination required by the federal wiretap statute.[9] *See United States v. Ippolito*, 774 F.2d 1482, 1485 (9th Cir. 1985) (explaining that while the *Franks* decision addressed probable cause, its reasoning now applies to the necessity determination because of "the importance of truthful information to the neutral detached magistrate who must . . . decide whether to issue a wiretap order"); *see also United States v. Goldstein*, 989 F.3d 1178, 1197 (11th Cir. 2021); *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013); *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). Thus, evidentiary hearings have been granted where false statements or omissions made with the

---

9. As we explained in *State v. Sadat Hebeishy*, 2022 UT App 134, "Utah's necessity requirement is substantially identical to the necessity requirement in the federal wiretap statute." *Id.* ¶ 18 (cleaned up).

requisite mens rea have been shown to undermine either the probable cause *or* the necessity determination.

¶22 "It is relatively difficult for a defendant to make the substantial preliminary showing required under *Franks*. Allegations of negligent or innocent mistakes do not entitle a defendant to a hearing, nor do conclusory allegations of deliberately or recklessly false information." *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013) (cleaned up), *cited in Fuller*, 2014 UT 29, ¶ 25 n.11. As our supreme court has stated, "[t]he burden on the defendant here is high." *Fuller*, 2014 UT 29, ¶ 25. The defendant "must specifically point to portions of the affidavit" claimed "to be misleading," and if the defendant's claim is not properly substantiated, the defendant "is not entitled to an evidentiary hearing." *Id.*

¶23 Here, the district court denied Defendants' motion for a *Franks* hearing, concluding Defendants had failed "to meet the evidentiary showing required by *Franks*." Specifically, the court found that they "failed to demonstrate that any of the factual allegations underlying the previous law enforcement activities were false" or that Officer's affidavit was otherwise "inaccurate, false, or misleading." The court further found that even if there had been a misleading statement in the affidavit, Defendants had not shown that Officer acted "knowingly, intentionally, or recklessly." The court also determined that Defendants had not established that the allegedly misleading statements or omissions were "material to the finding of necessity" or "probable cause," and it observed that Defendants' allegations were merely "arguments against the conclusions to be drawn from" the information in the affidavit.

2

¶24 Even assuming that we should extend the rationale of *Franks* and its progeny to the Act's necessity requirement as federal courts have done relative to the federal wiretap statute, we

conclude that Defendants have not shown that the district court erred in denying their request for a *Franks* hearing.

¶25 We first address Defendants' contention that a *Franks* hearing was required because the affidavit Officer provided in support of the wiretap application "included an abundance of false and misleading statements." In support of that claim, Defendants point exclusively to a statement Officer made at the outset of the necessity section of his affidavit.

¶26 There, Officer acknowledged that "there are a number of practical methods whereby law enforcement officials can procure prosecutable evidence" against those individuals or organizations under investigation. He described some of those methods but explained that traditional investigative techniques are, at times, "unpractical, unfeasible, or too dangerous" to employ. Officer then expressed his belief that a wiretap was necessary in this case because "traditional investigatory methods have failed to realize the dissolution of the Titanic Crip Society criminal street gang"—the stated goal of the investigation—and because traditional investigatory methods were "either unpractical, too dangerous, or unlikely to result in the procurement of evidence to prosecute fully the participants who engage in criminal conduct on behalf and for the benefit of the organization." Defendants' challenge appears to be directed to Officer's last two assertions.

¶27 We agree with the district court that these contentions were insufficient to meet the demanding evidentiary showing required by *Franks*.

¶28 To begin, Defendants have not shown that the court committed clear error in finding that Officer's assertions were not false. To the contrary, Officer's catalog of law enforcement's previous efforts to combat TCS's criminal activities supported Officer's claim that despite occasional successes, the criminal organization endured. *See State v. Sadat Hebeishy*, 2022 UT App 134, ¶¶ 5, 8, 11, 20–33. Similarly, Officer's detailed description of

why he believed traditional investigative techniques were inadequate to achieve the goal of the investigation—to dismantle the gang by building a case against TCS's shot callers—demonstrated a reasonable basis for his belief. *See id.* Although Defendants may disagree with Officer's assertions about the inefficacy of traditional investigative techniques, Defendants have not shown that the stated belief was false. In fact, even though Defendants suggest that search warrants were occasionally effective and a juvenile gang member shared information with law enforcement, Defendants have not shown that it was false for Officer to assert that these techniques could not achieve the goal of the investigation.

¶29 Further, Defendants have not shown error in the district court's additional determinations that Defendants failed to show that Officer made the allegedly false statements knowingly, intentionally, or recklessly or that probable cause or necessity would have been lacking had the identified statements been omitted from the affidavit. Defendants merely accuse Officer of intentionally misleading the magistrate, but they have not shown that the court erred in deciding that their offer of proof on that point was inadequate. Similarly, Defendants have not engaged with the entirety of the 180-page affidavit and demonstrated that if the assertions about which they complain were removed, either the probable cause or the necessity requirements would have been unmet. Without analysis on these points, Defendants cannot meet their burden of showing that a *Franks* hearing was warranted. *See State v. Ogden*, 2018 UT 8, ¶ 24 n.3, 416 P.3d 1132 ("An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion." (cleaned up)).

¶30 Next, we address Defendants' contention that "[t]here are several instances of intentionally omitting information that would be crucial to an adequate analysis for the issuance of a search warrant." Although Defendants complain of "several" omissions, they identify only one: Officer's alleged omission that

"there had never been an attempt to dismantle the TCS gang." But beyond identifying the alleged omission, Defendants do not otherwise engage with the requisite analysis to demonstrate that the district court erred in denying their request for a *Franks* hearing.

¶31 As explained above, *see supra* ¶ 20, to warrant a *Franks* hearing for an alleged omission, a defendant must, "by a detailed offer of proof," make a "substantial showing" that the officer "intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *State v. Gonzalez*, 2021 UT App 83, ¶ 24, 494 P.3d 1066 (cleaned up). A defendant must also show that the affidavit would fail to establish probable cause or necessity if it were to be supplemented by the omitted information. *See id.* Defendants make no attempt to demonstrate that these elements were met in the district court. They point to no offer of proof that would suggest (1) that there had, in fact, never been an attempt to dismantle TCS; (2) that, even if true, Officer intentionally, knowingly, or recklessly omitted the alleged fact; (3) that without the alleged fact, the affidavit was misleading; or (4) that had the alleged fact been included, probable cause or necessity could not have been established. Absent an attempt to establish that these elements were met, Defendants' *Franks* claim based on an alleged omission necessarily fails. *See Ogden*, 2018 UT 8, ¶ 24 n.3. Therefore, the district court did not err in denying Defendants' motion to suppress without holding a *Franks* hearing.

## II. Pattern of Unlawful Activity

¶32 Hebeishy challenges the district court's denial of his motion to dismiss two of the four predicate offenses that supported the charge against him for pattern of unlawful activity. Specifically, Hebeishy sought dismissal of predicate offense nine for aggravated assault and predicate offense fourteen for assault by a prisoner. Hebeishy argued that neither could be included as

a predicate offense because the statute of limitations applicable to the offenses had expired. Alternatively, Hebeishy argued that predicate offense nine's inclusion violated the prohibition against double jeopardy. For the reasons explained below, we reject both claims.

¶33 Utah's Pattern of Unlawful Activity Act (UPUAA) "criminalizes certain acts involving a pattern of unlawful activity." *State v. Stewart*, 2018 UT 24, ¶ 6, 438 P.3d 515. "'Pattern of unlawful activity' means engaging in conduct which constitutes the commission of at least three episodes of unlawful activity, which episodes are not isolated, but have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." Utah Code Ann. § 76-10-1602(2) (LexisNexis Supp. 2022).

¶34 UPUAA requires that "[a]t least one of the episodes comprising a pattern of unlawful activity shall have occurred after July 31, 1981," and states that "[t]he most recent act constituting part of a pattern of unlawful activity . . . shall have occurred within five years of the commission of the next preceding act alleged as part of the pattern." *Id.*

¶35 Predicate offense nine, on which the pattern of unlawful activity charge against Hebeishy was based, is an aggravated assault that Hebeishy allegedly committed on September 17, 2008. Predicate offense fourteen is an assault by a prisoner allegedly committed by Hebeishy on April 8, 2011. Both offenses are felonies with a statute of limitations of four years. *See id.* § 76-1-302(1)(a) (statute of limitations of felonies is four years unless otherwise provided by law); *id.* § 76-5-102.5(3) (assault by prisoner is a felony); *id.* § 76-5-103(3) (aggravated assault is a felony). Hebeishy argues that including these offenses as part of the pattern of unlawful activity charge was "an impermissible violation of the statute of limitations" because the pattern of unlawful activity charge was filed on June 22, 2016—more than

four years after the predicate offenses were allegedly committed.[10] We disagree.

¶36 The district court correctly concluded that Hebeishy's argument has been resolved by our supreme court in *State v. Stewart*, 2018 UT 24, 438 P.3d 515. There, the court was asked "whether individual crimes that are outside of the relevant statute of limitations can form the basis of [a pattern of unlawful activity] charge." *Id.* ¶ 24. The court answered the question in the affirmative. It concluded that UPUAA "permits the State to base a pattern of unlawful activity on crimes on which the statute of limitations has expired." *Id.* ¶ 25. Otherwise, the court reasoned, it "would read the five-year lookback out of the statute." *Id.* ¶ 17. The court explained: "[I]magine a prosecutor who relies on three instances of misdemeanor assault to establish a pattern of unlawful activity. If the statute required all three instances of assault to be not time barred, all three instances must occur within the two year statute of limitations for misdemeanor crimes. This interpretation renders the five-year lookback period meaningless." *Id.*

---

10. Pattern of unlawful activity is itself subject to the general four-year statute of limitations for a felony. *See* Utah Code Ann. § 76-10-1603.5(1) (LexisNexis 2017). That period begins to run at the time of the most recent predicate act, which in this case was aggravated assault (predicate offense one) committed on November 30, 2015. The next preceding act, obstruction of justice (predicate offense two), occurred just one week earlier. Thus, the pattern of unlawful activity charge was filed within the four-year statute of limitations and the penultimate act falls within the five-year lookback period. Hebeishy does not contend the pattern of unlawful activity charge itself violates the statute of limitations; instead, he contends that two of the predicate offenses on which the charge is based are barred by the statute of limitations that would apply to them if they were charged separately.

¶37　In this case, the statute of limitations for both predicate offenses expired before the pattern of unlawful activity charge was filed. But under *Stewart*, the predicate offenses need not be timely under their respective statute of limitations. In his reply on appeal, Hebeishy does not resist this conclusion, but he argues that even if the State may premise a pattern of unlawful activity charge on an offense on which the individual statute of limitations has expired, the proper reading of *Stewart* then dictates that the five-year lookback period in UPUAA "extends the statute of limitation" on all predicate offenses to five years. Relying on that five-year period, Hebeishy argues that predicate offenses nine and fourteen are still time barred because both occurred more than five years before the pattern of unlawful activity charge was filed.

¶38　We do not share Hebeishy's view of *Stewart*. The language in *Stewart* on which Hebeishy relies does not support his interpretation. There is nothing in the court's analysis to suggest that it interpreted UPUAA's five-year lookback as imposing a five-year statute of limitations on all predicate offenses. *See id.* ¶¶ 14–17, 24. Further, such an interpretation would be inconsistent with the language of the statute. As noted above, UPUAA dictates that "[t]he most recent act constituting part of a pattern of unlawful activity . . . shall have occurred within five years of the commission of the next preceding act alleged as part of the pattern." Utah Code Ann. § 76-10-1602(2). Plainly interpreted, this provision "requires that no more than five years separate the penultimate episode of unlawful activity from the most recent episode in the pattern." *Stewart*, 2018 UT 24, ¶ 15. It "does not refer to the statute of limitations for the underlying crimes." *Id.* Accordingly, Hebeishy's claim fails.[11]

---

11. Hebeishy additionally argues that the *Stewart* court intended to draw a distinction between convictions and allegations of criminal wrongdoing, arguing that *convictions* that fall outside the

(continued…)

¶39    Finally, Hebeishy contends in the alternative that predicate offense nine (aggravated assault) should have been dismissed as a violation of double jeopardy and Utah's single criminal episode statute because Hebeishy was already convicted of riot based on the same underlying facts that establish the predicate offense of aggravated assault. Hebeishy argues that the State "transformed" the riot conviction into the predicate offense of aggravated assault because "riot is not listed as one of the allowable predicate offenses delineated in Utah Code Ann. § 76-10-1602(4)." He asserts that this "alteration" "violates the double jeopardy and [Utah's] single criminal episode protections" and contends that the district court erred in not dismissing predicate offense nine on these grounds. We reject Hebeishy's challenge on the basis that it is inadequately briefed.

¶40    The United States and Utah constitutions declare that no person shall "be twice put in jeopardy" for "the same offence." U.S. Const. amend. V; Utah Const. art. I, § 12. These "double jeopardy clauses" protect a defendant from "prosecution for the same offense" after acquittal or conviction, and from "the infliction of multiple punishments for the same offense." *State v. Robertson*, 2017 UT 27, ¶ 15, 438 P.3d 491 (cleaned up). Two

---

applicable statute of limitations "can be listed as predicate offenses in support [of] a charge of Pattern of Unlawful Activity" but that "*allegations* of crimes that are beyond" their applicable statute of limitations could not be. (Emphasis added.) We also reject this argument as unsupported by the analysis in *Stewart* and the plain language of UPUAA. Neither authority draws any such distinction. *See State v. Stewart*, 2018 UT 24, ¶¶ 10–25, 438 P.3d 515; *see also* Utah Code Ann. § 76-10-1602(4) (LexisNexis Supp. 2022) (drawing no distinction between predicate acts based on convictions or mere allegations of wrongdoing and instead defining unlawful activity as "conduct" or "an act" "which would constitute" any of the listed offenses "*regardless of whether the act is in fact charged or indicted by any authority*" (emphasis added)).

offenses are "not the same when each requires proof of a fact which the other does not." *Id.* ¶ 16 (cleaned up).

¶41 Utah's single criminal episode statute "extends this protection even further—protecting, by statute, a defendant from multiple prosecutions for *different offenses* committed as part of a single criminal episode." *State v. Sisneros*, 2022 UT 7, ¶ 1, 506 P.3d 564; *see also* Utah Code Ann. §§ 76-1-401 to -403 (LexisNexis 2017). The statute "bars the State from subjecting a defendant to separate trials for multiple offenses that arise under a single criminal episode when the offenses are within the jurisdiction of a single court and are known to the prosecuting attorney at the time the defendant is arraigned on the first information or indictment." *Sisneros*, 2022 UT 7, ¶ 11 (cleaned up). A "single criminal episode" is defined under the statute as "all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective." Utah Code Ann. § 76-1-401.

¶42 The State argues that Hebeishy's challenges to predicate offense nine on these two bases "should be rejected because they are inadequately briefed." The State acknowledges that Hebeishy generally recites the law regarding double jeopardy and single criminal episode principles but asserts that Hebeishy's argument is otherwise limited to "a single conclusory sentence." According to the State, Hebeishy does not "analyze the facts and the law or otherwise demonstrate how either of these complex legal doctrines has been violated." We agree.

¶43 The district court expressly addressed Hebeishy's argument based on the double jeopardy clause, concluding that it "is not violated in a Pattern of Unlawful Activity charge where predicate offenses relied on are prior convictions."[12] The district

---

12. The court denied Hebeishy's motion to dismiss in its entirety but did not separately address Hebeishy's argument based on the single criminal episode statute—an argument that was intertwined with the double jeopardy argument.

court observed that because there is an additional element in the pattern of unlawful activity charge, "the double jeopardy doctrine does not apply." But in challenging the district court's ruling, Hebeishy does not address the basis for the court's decision or identify any specific flaw in its reasoning. Instead, Hebeishy simply repeats the arguments he made below without engaging in the necessary analysis to demonstrate error by the district court. Further, even putting the district court's decision aside, Hebeishy has not articulated a reasoned basis for us to conclude that double jeopardy applies where the offense for which he was convicted (riot) and the offense charged here (pattern of unlawful activity) "each require[] proof of a fact which the other does not." *See Robertson*, 2017 UT 27, ¶ 16 (cleaned up).

¶44   Similarly, regarding his argument based on the single criminal episode statute, Hebeishy defends the absence of reasoned analysis on the point by attempting to shift his burden to the State. Rather than respond to the identified deficiencies in his own argument, Hebeishy states only that the State's position "goes against the statutes and the case law," but Hebeishy does not analyze how the single criminal episode statute intersects with UPUAA and whether the elements of the statute were satisfied here. *See supra* ¶ 41 (identifying elements of a challenge based on the single criminal episode statute).

¶45   In both instances, Hebeishy's challenge is inadequate. It is Hebeishy who bears the burden on appeal, and to carry that burden, it is incumbent on him to address the district court's ruling, develop citation to authority, and present reasoned analysis based on that authority. *See State v. MacNeill*, 2017 UT App 48, ¶ 84, 397 P.3d 626; *see also* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."). Because Hebeishy has not met his burden, his challenge fails. *See State v. Baer*, 2019 UT App 15, ¶ 19, 438 P.3d 979 ("An appellant that fails to devote adequate attention to an

issue is almost certainly going to fail to meet his burden of persuasion." (cleaned up)).

## CONCLUSION

¶46   We conclude that the district court did not err in denying Defendants' motion to suppress evidence obtained from a wiretap of Hebeishy's mobile phone. The court correctly determined that Officer satisfied the necessity requirement of the Act, and Defendants have not shown that they were wrongfully denied their request for a *Franks* hearing based on their claims that Officer's affidavit was misleading. We also conclude that the court did not err in denying Hebeishy's motion to dismiss predicate offenses nine and fourteen on the basis that they were barred by the applicable statute of limitations, and Hebeishy has not shown that the court erred in declining to dismiss offense nine on the alternative grounds that it violated double jeopardy or Utah's single criminal episode statute. For these reasons, we affirm.

———